70 N.J. Super. 202 (1961)
175 A.2d 256
GLORIA ANDERSON, PETITIONER-RESPONDENT,
v.
CHATHAM ELECTRONICS, DIVISION OF TUNGSOL ELECTRIC COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1961.
Decided November 13, 1961.
*203 Before Judges GAULKIN, KILKENNY and HERBERT.
Mr. Isidor Kalisch argued the cause for the appellant (Mr. Stanley U. Phares, attorney).
Mr. Sidney M. Schreiber argued the cause for the respondent (Messrs. Schreiber, Lancaster & Demos, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This is a workmen's compensation case. Gloria Anderson, the employee, was awarded compensation in the Division and the award was affirmed by the County Court. The employer appeals.
In February 1957 Mrs. Anderson was granted a leave of absence by the employer to undergo surgery unrelated to her employment. She was operated on for an "appendectomy, left ovary forectomy * * * and a uterine suspension" by her own Dr. Mahood, under whose care she continued after she left the hospital. She testified that on Wednesday, *204 May 1, 1957, Dr. Mahood had told her she could go back to work "about Monday"; on Thursday, May 2, she telephoned the employer's personnel department and told Miss Geraldine (Gerry) Koegel she was ready to come back to work on Monday; and that "Gerry" replied "I would have to have a slip * * * from my doctor saying that I was okay to come back to work * * * I had to bring the slip in before I could start."
Mrs. Anderson lived in South Orange; Dr. Mahood's office was in Maplewood. Mrs. Anderson claimed she telephoned the doctor's office on Thursday and made an oppointment for Friday evening, May 3, to obtain the slip. On Friday evening, after having obtained the slip and while returning from the doctor's office to her home by taxi, she was involved in a collision in which she was seriously and permanently injured. It was for these injuries that she received the award.
The employer contends that the injury did not arise out of and in the course of the employment.
The employer points to the fact that "Gerry" testified that Mrs. Anderson told her she was going to the doctor on Friday and if "everything was all right she would be in on Monday"; that Dr. Mahood testified that on April 30, when Mrs. Anderson came to his office for one of her post-operative examinations, she had a cold, for which he gave her an injection and prescribed penicillin and a cough mixture; that she returned on said Friday, May 3, at which time, after giving her a thorough examination, he discharged her as cured post-operatively and gave her a writing certifying that she was physically fit to go back to work. The employer argues that this proves that the obtaining of the slip was merely incidental to the May 3 visit to the doctor, which had been arranged before she was told she would need the slip, and the trip would have been made in any event on that day for final check-up and discharge.
Mrs. Anderson denied this, even after being confronted with her signed statement in which she had said: "On Friday *205 evening I went to Dr. Mahood's office for a final check up so that he could release me so that I could go back to work." She testified that Dr. Mahood did nothing on May 3 except give her the slip, and that not only did he not examine her, but he did not even ask her how she felt. Mrs. Anderson insisted that the trip was for the sole purpose of obtaining the slip.
The judge of compensation did not resolve this conflict in the testimony, apparently on the basis that it made no difference whether the purpose of the visit to Dr. Mahood was only for the slip, or for the prearranged examination as well. The County Court, on the other hand, said in its opinion, "I find the sole purpose of the trip was to obtain the slip." The employer asks us to overturn that finding of the County Court. However, we deem it immaterial whether Mrs. Anderson went to Dr. Mahood's office for the slip and for a final prearranged examination, or whether the trip was for the slip alone. In either event we hold that, under the circumstances of this case, the trip was not part of the employment and the accident did not arise out of and in the course of the employment.
Mrs. Anderson argues to the contrary on the ground that when the employer told her to get the slip it sent her "on a special errand" for his "benefit" as in Ryan v. St. Vincent de Paul Roman Catholic Church, 41 N.J. Super. 206 (App. Div. 1956) and Bobertz v. Board of Education of Hillside Township, 134 N.J.L. 444 (Sup. Ct. 1946), reversed on other grounds 135 N.J.L. 555 (E. & A. 1947).
We find no "errand" here, special or otherwise. After being away from her employment for over two months because of major surgery, Mrs. Anderson represented to the employer that she was physically able to go back to work. The employer had the right to ask for proof. It did not ask her to go to its doctor, or even to her own doctor, for further examination. It merely asked for a certificate from her doctor that what she was telling the employer was true  namely, that she was able to go back to work. It did not *206 tell Mrs. Anderson to go to Dr. Mahood's office for the certificate. There is no indication that the employer knew who the doctor was, or his whereabouts. She could have obtained the slip by telephoning the doctor to mail it to her or to the employer. She could have had the doctor come to her home, or sent a messenger to the doctor's office to pick it up. She protests that she had to go to the doctor's office to pick up the slip because she wanted to be sure she had it by Monday. Laying aside the fact that it seems to us that she could have obtained it by Monday by other means than traveling to Maplewood, it was of no concern to the employer whether she came back to work on Monday or later. The selection of Monday as the date of return was her own. Suppose she had been operated on in Mayo Clinic in Minnesota? Could it be argued that an injury sustained while returning from Minnesota would be compensable?
Employers frequently require employees to exhibit their drivers' licenses, birth certificates, "working papers," citizenship papers, military service discharge papers, union cards, etc. We know of no case in which it has been suggested that the trip of an employee, who does not have the paper requested in his possession, to obtain it, on his own time, is within the employment, and that an accident en route is compensable.
It must be remembered that Mrs. Anderson's surgical operation was not for a work-connected or compensable ailment. Larson points out (1 Law of Workmen's Compensation (1952), § 13.13, p. 186) that even when a trip to a doctor is with reference to a compensable injury, "it should not therefore be necessarily concluded that anything happening * * * in the course of a visit to the doctor is compensable. To get this result, there should be either a showing that the trip was in the course of employment by usual tests [as where the doctor has been designated or the appointment made by the employer], or that the nature of the primary injury contributed to the subsequent injury in some way other than merely occasioning the journey *207 * * *." See John v. Fairmont Creamery Co., 268 App. Div. 840, 50 N.Y.S.2d 253 (App. Div. 1944); Fitzgibbons v. Clarke, 205 Minn. 235, 285 N.W. 528 (Sup. Ct. 1939); Goldberg v. 954 Marcy Corp., 276 N.Y. 313, 12 N.E.2d 311 (Ct. App. 1938); Huhn v. Gehnrich Indirect Heat Oven Co., 225 App. Div. 839, 232 N.Y. Sup. 774 (App. Div. 1929), affirmed 250 N.Y. 568, 166 N.E. 327 (Ct. App. 1929); cf. Mack v. M. & S. Maintenance Co., 4 N.J. Super. 251 (App. Div. 1949); Skelgas v. Industrial Commission, 400 Ill. 322, 79 N.E.2d 501 (Sup. Ct. 1948); Farmers' Gin Co. v. Cooper, 147 Okla. 29, 294 P. 108 (Sup. Ct. 1930); Wilson v. H.C. Frick Coke Co., 268 Pa. 256, 110 A. 723 (Sup. Ct. 1920).
Mrs. Anderson argues that obtaining the slip was for the employer's benefit, for the same reasons as was the vaccination in Saintsing v. Steinbach Co., 1 N.J. Super. 259 (App. Div. 1949). But the vaccination cases stand on quite a different footing. In the first place, when the employer asks the employee to expose himself to vaccination, inoculation, blood test, etc., he asks the employee to submit to a risk of infection, which the employee might not otherwise do. There would be no liability if the employer merely asked an employee who claimed he had been vaccinated to produce a doctor's certificate to that effect. Secondly, vaccination and inoculation against epidemic infections are for the purpose of protecting the employer's operations from disruption by wholesale illness of his employees. Saintsing v. Steinbach Co., supra.
Mrs. Anderson argues that the medical certificate which it requested her to obtain was for the employer's "benefit" for the additional reason that "to know and be assured that the employee is physically fit for work are obviously for the employer's benefit." In her supplemental memorandum she says "the employer's desire for a medical clearance slip is obviously to serve its purposes. Physical capability of the employee at the job is important to an employer * * * to insure that the work is performed efficiently, that the *208 employee is not injured at the job, and that other employees will not be affected." Those considerations are too remote in the case at bar to turn the employee's compliance with the condition precedent to resumption of her employment, imposed by the employer, into a "special errand" for the benefit of the employer. It is a benefit to the employer for the employee to have good teeth, hearing and eyesight; to get enough fresh air, exercise, wholesome food and sleep; to keep away from liquor and tobacco; and to keep clean. It would be a most extraordinary case in which the employer's request or even direction to the employee to obtain these "benefits" on his own time as a condition of further employment would make compliance part of the employment. An employer might tell an employee that his hearing or eyesight appears to be failing, and that unless he gets it corrected he will have to terminate the employment. We conceive that an injury sustained while en route to the employee's own doctor to be fitted for glasses or a hearing aid would not be compensable. An employee may be required to furnish his own uniform, or a tool such as a hammer. Certainly an injury sustained while en route to purchase such an item on his own time, off the premises, would not be compensable. An employer might object to an employee's lack of cleanliness, and might tell him that in the future he is to shave and bathe more often as a condition for continued employment. That would not make a cut while being shaved in a barber shop or a fall on a cake of soap in a public bath compensable.
For the foregoing reasons, the judgment is reversed and judgment is entered in favor of the employer. No costs.