178 N.J. Super. 535 (1981)
429 A.2d 615
LILLIAN CAMP, PETITIONER-APPELLANT,
v.
LOCKHEED ELECTRONICS, INC., RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Submitted April 14, 1981.
Decided April 23, 1981.
*538 Before Judges MATTHEWS, MORTON I. GREENBERG and COLEMAN.
*539 Seaman, Clark, Levine & Addy, attorneys for appellant (Thomas R. Kerr on the brief).
Michals, Wahl, Silver & Leitner, attorneys for respondent (Harmon H. Lookhoff and Sheldon Schiffman on the brief).
The opinion of the court was delivered by COLEMAN, J.S.C. (temporarily assigned).
This is an appeal from a workers' compensation proceeding which found no permanent disability. Petitioner filed a workers' compensation claim petition on March 3, 1969 alleging the compensability of a December 27, 1968 fall. The petition was never amended to allege the compensability of a March 9, 1969 auto accident. On January 9, 1973 a settlement was presented to a judge of compensation in the form of an order approving settlement. In connection with that proceeding certain medical evidence was introduced. That evidence included a report of Dr. Bergman, who evaluated 2 1/2% partial total for overlapping post-traumatic neuropsychiatric disability causally related to the accident of December 27, 1968. In his report he further revealed that the medical records disclose that at the time of the X-rays following the December 27 accident petitioner had a "periosteal tear at the joint area between the distal sacral segment at the first coccygeal segment." Dr. Cannata's report, who also examined for respondent, was marked into evidence. His report disclosed the following: "January 1970 a myelogram of a lumbar spine was performed and revealed a flake fracture of L6 and S1 articulate faceltis (right side)." Dr. Cannata evaluated 17 1/2% overall, regardless of cause, for the residuals of a flake fracture of the articulate faceltis of L-6 and S-1 superimposed on a previous pre-existent congenital anomaly, and the residuals of a postoperative spinal fusion and scarring approximately eight inches in length.
For some unexplained reasons, counsel for petitioner never submitted the order approving settlement for the judge's signature. On October 25, 1974 the judge prepared and signed a *540 judgment instead of an order approving settlement. On December 30, 1974 a notice of motion for rehearing was filed and the motion was heard on December 18, 1975, at which time the settlement was vacated and a plenary trial date was set. The trial commenced on July 5, 1977 and a decision was finally rendered on April 23, 1980, finding no permanent disability related to the December 27, 1968 accident.
The facts adduced at trial showed that respondent conceded the compensability of the December 27, 1968 accident in which petitioner sustained injuries as a result of a fall. These injuries were to the coccyx, low back, buttocks and right leg. The two physicians immediately seen by the petitioner for these injuries saw her three to four times a week and treated her with diathermy, injections, medication and prescribed a back brace. During that time petitioner had pain in the coccyx, low back, leg and hips. An X-ray reportedly revealed a fractured coccyx.
During the course of this treatment, petitioner was involved in an automobile accident on March 9, 1969. The collision occurred while petitioner was a passenger in a car returning from a visit to one of her treating physicians.
The March 9, 1969 collision seems to have been quite a serious one, for the car spun around several times from the impact. Petitioner testified below that her injuries were sustained when the impact forced her right arm to strike the door, her head to go back, her shoulders to twist, the striking of her left ankle and right hand in an attempt to brace herself, and her buttocks to be struck by her pocketbook.
Petitioner was taken to John F. Kennedy Hospital where she complained of injury to the dorsal lumbar area, the right hand, the left ankle, the head, neck and shoulders.
Petitioner continued to receive diathermy, injections, medication and brace treatments made necessary by the December 27, 1968 fall. In addition, petitioner required neck and shoulder treatment as well as whirlpools, traction, hot packs, a bed board and elastic stockings.
*541 Petitioner testified that prior to the automobile accident she had shooting pain from the coccyx into the hips, in the right leg, low back and right foot. She could not do housework, bend or lift heavy objects. She has been on disability, not working and under continual doctors' care from the time of the original fall on December 27, 1968 until the trial.
In January 1970 one of petitioner's doctors hospitalized her for a myelogram and surgery to her low back at L-5 and L-6. Surgery was performed in February 1970 consisting of a laminectomy, excision of a disc and a fusion. However, the surgery did not eliminate petitioner's pains. In September 1970 petitioner had right-hand surgery for a double ganglion cyst. She was admitted to New Brunswick Rehabilitation Center for a month in October 1970 and returned to the center for weekly treatments for a year while continuing previously described treatment.
In 1974, while continuing diathermy, injections, medicine and traction therapies, petitioner was sent to the John F. Kennedy Hospital for X-rays. Subsequently she was sent to Rahway Hospital for an electromyogram and to John F. Kennedy Hospital for a second myogram. Petitioner declined to have surgery at this time, but the pain continued as did the treatments.
At trial petitioner called her two daughters to testify as to her disabilities in doing simple housework tasks and attending to her own personal hygiene. Petitioner continues with diathermy, medication, injections of cortisone and traction, and still remains in pain, unable to perform simple household tasks. Petitioner and the doctors who testified on her behalf claimed she was totally disabled from the residuals of the two accidents. The judge of compensation, however, disagreed and found no permanent disability related to the December 28 accident.
On appeal petitioner contends the judge erred. Respondent has cross-appealed, contending that it was error to vacate the order approving settlement. We agree that the finding that petitioner had no permanent disability must be reversed. Our *542 review of the entire record leads us to conclude that the conclusions were not supported by the credible evidence. Close v. Kordulak Bros., 44 N.J. 589 (1965).
At the time the settlement was presented to the judge on January 9, 1973 respondent placed into evidence two medical reports that concluded that petitioner had permanent disability related to the December 27 accident. Those proceedings were conducted over four years following the accident. It must be remembered that X-rays showed a fractured coccyx. We are unable to determine from the record if the judge reviewed these reports. In any event, they were available and should have been reviewed in the light of the history of this case. Moreover, respondent did not seriously contend that petitioner had no permanent disability related to the December accident. It could not in good faith, since its examining doctors found permanency. In filing a cross-appeal respondent is still conceding its willingness to pay petitioner ten 10% disability. In the face of this evidence, we are compelled to reverse.
Additionally, shortly before the March 9 accident petitioner had been treated by a doctor for signs and symptoms to the low back, hips and legs that were essentially unchanged shortly after said accident. Thus, the inquiry before the judge of compensation was whether the injuries to the low back were reasonably attributable to the December accident. McDonough v. Sears, Roebuck & Co., 127 N.J.L. 158, 160 (Sup.Ct. 1941), aff'd 130 N.J.L. 530 (E. & A. 1943); Kelly v. Federal Shipbuilding and Dry Dock, 1 N.J. Super. 245 (App.Div. 1949). Instead, the judge focused on whether the March 9 accident aggravated the low back conditions. Aggravation was but one factor to be considered. The judge seemingly made it the exclusive consideration and concluded that he could not apportion the disability. Since we are reversing and remanding the case to the Division, this legal error will be corrected.
Even though this case was pending in the Division for about ten years, the record does not disclose any attempt by *543 appellant to allege that the March 9 accident was compensable. Because of the extensive delays already encountered processing the claim, we have decided to exercise our original jurisdiction in adjudicating the compensability of the March 9 accident based upon the record. R. 2:10-5. We regard the need for expeditious handling of workers' compensation cases to be in the public interest. Nemeth v. Otis Elevator, 55 N.J. Super. 493 (App.Div. 1959); State v. Rose, 173 N.J. Super. 478, 483 (App.Div. 1980); Blasi v. Ehret, 118 N.J. Super. 501 (App.Div. 1972). Long delays create an appearance of injustice as well as real injustice many times. It increases cost for premiums which are ultimately paid by the consumer.
The evidence was undisputed that petitioner was injured in an automobile accident on March 9, 1969 while returning home from treatment administered by the authorized treating doctor. N.J.S.A. 34:15-15. The question of compensability of such an accident is one of novel impression except to the extent discussed in Anderson v. Chatham Electronics, 70 N.J. Super. 202 (App.Div. 1961). There the petitioner was not permitted to recover because she was returning home from the office of her personal physician who had treated her for conditions unrelated to her employment. The decision in Anderson rested upon the selection of the physicians by the petitioner rather than by the employer. There the court said:
It must be remembered that Mrs. Anderson's surgical operation was not for a work-connected compensable ailment. Larson points out (1 Law of Workmen's Compensation (1952), § 13.13 p. 186) that even when a trip to a doctor is with reference to a compensable injury, "it should not therefore be necessarily concluded that anything happening * * * in the course of a visit to the doctor is compensable. To get this result, there should be either a showing that the trip was in the course of employment by usual tests [as where the doctor has been designated or the appointment made by the employer], or that the nature of the primary injury contributed to the subsequent injury in some way other than merely occasioning the journey". [at 206, citations omitted].
While there is no New Jersey case that has concluded that under the facts of this case the accident was compensable or noncompensable, the law elsewhere has established that an employee who is injured while coming from or going to receive *544 authorized medical treatment in connection with a compensable accident, is covered under the workers' compensation act for the latter accident as well as the former. 1 Larson, The Law of Workmen's Compensation, § 13.13 (1978). The instant case seems to fall into the class of cases Professor Larson has suggested ought to be compensable. He summed up this trend in the law by saying:
A fall or automobile accident during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey, without any necessity for showing that the first injury in some way contributed to the fall or accident. [Op. cit. at § 13.13.]
The recent California case of Laines v. Workmen's Comp. Appeals Bd., 40 Cal.Comp. Cases, 365, 48 Cal. App.3d 872, 122 Cal. Rptr. 139 (App.Ct. 1975), is exactly on point with the facts herein. There the petitioner was injured a second time while in transit to an employer provided clinic for treatment of injuries resulting from a prior compensable incident. The only difference between that case and the instant one is that Mrs. Camp was returning from an authorized doctor while Mr. Laine was en route to an employer-provided doctor. This distinction is of no moment and the rationale of Laine seems appropriate. The court in Laine stated that:
It would be folly to say that the claimant's trip going to and from the doctor's office did not "arise out of" the nature, conditions, obligations, or incidents of his employment. [at 141].
The court held that
... petitioner, in travelling to the examining physician's office, was engaged in an activity which arose out of and in the course of his employment as of the time when the industrial injury was received. [at 144, emphasis supplied].
Considering the liberality with which New Jersey states that workers' compensation statutes should be viewed, we feel that this trend in the law should be followed in New Jersey.
We feel that the issue in controversy may be analogized to a situation in which a patient-petitioner is injured through some negligence occurring during the actual treatment of a compensable injury. The law in New Jersey is clear that this second injury is compensable. Mager v. United Hospitals of *545 Newark, 88 N.J. Super. 421 (App.Div. 1965), aff'd 46 N.J. 398 (1966). Petitioner may also file a third-party action against the negligent doctor, or the negligent driver of the other vehicle, as was the case here, and the employer would be entitled to reimbursement pursuant to N.J.S.A. 34:15-40. Walck v. Johns-Manville Products Corp., 56 N.J. 533, 561-562 (1970). Since the employer is responsible for injuries caused by an authorized treating doctor, we perceive no just reason why injuries caused going to and from the doctor should not likewise be compensable.
It is indubitable that had petitioner's attorney recognized that the second accident was compensable, he would have amended the petition below to include it. It also must be assumed that the judge below did not recognize the compensability of the auto collision, else he should have raised it in the interest of justice. Undoubtedly petitioner felt a sense of injustice when she motioned the court to vacate the order approving settlement because it determined that the March 9 accident was not compensable. While the judge did not fully articulate the reasons for vacating the settlement, implicit in the result is his feeling also that petitioner was not being treated justly. We, therefore, find another ground upon which to reopen the tribunal below that is the ground of mistake.
The recent case of Hyman v. Essex Cty. Carpet Cleaning Co., 157 N.J. Super. 510 (App.Div. 1978), dealt with this very issue. In that case the question arose as to whether the workers' compensation judgment could be reopened in order to correct a mistake, and if so, whether there is a time limit to this procedure. While we are not concerned with timeliness, for there is no dispute as to the punctuality of this appeal, we are interested in the initial question. The court in Hyman emphatically states:
We have no doubt at all as to the affirmative answer to the first of these inquiries. Irrespective of the absence of express statutory authority and a one-year limitation imposed upon such a reopening in certain circumstances, N.J.S.A. 34:15-54, it is abundantly clear that the division has the inherent power, "comparable to that possessed by the courts" [R. 4:50], to reopen judgments for fraud, mistake, inadvertence or other equitable ground....

*546 On the other hand, it is equally clear that a decision to reopen must not be arbitrary or based on whim. [at 516; citations omitted]
See, also, Estelle v. Red Bank Bd. of Ed., 14 N.J. 256 (1954); Stone v. Dugan Brothers of New Jersey, 1 N.J. Super. 13 (App. Div. 1948).
We feel that the mistakes of law committed at the hearing below are of sufficient import so as to meet the Hyman standard and to compel the reopening of the workers' compensation proceeding in accordance with our instructions.
Finally, we must decide whether petitioner is now time barred from alleging that the March 9, 1969 accident was compensable. N.J.S.A. 34:15-51 provides that the claim must be filed within two years of the accident, last payment of compensation or after the employer fails to pay pursuant to an agreement. However, there are exceptional circumstances that militate against blindly applying the two-year rule. In Barr v. Pascak Valley Hospital, 155 N.J. Super. 504, 511 (App.Div. 1978), the court pointed out that the legislative intent and public policy will be furthered by a liberal construction of the Workers' Compensation Act in order to reach a salutary and remedial result favorable to the injured workman, rather than one necessarily dictated by the "coldly literal import" of the legislation. See, also, Paul v. Baltimore Upholstering Co., 66 N.J. 111 (1974); Dawson v. Hatfield Wire & Cable Co., 59 N.J. 190 (1971); Granahan v. Celanese Corp. of America, 3 N.J. 187 (1949). Thus, a claim for additional medical care that was filed more than two years after last payment of compensation was allowed.
Another instance of liberal construction of the statute in order to reach a salutary result is V. v. Long Branch Sewage Auth., 86 N.J. Super. 56 (App.Div. 1964). A timely application was filed by a widow and her three children. A fourth child, however, filed a claim seeking benefits some six years after her deceased father's accident. It was held that no new petition was necessary. The new petition or motion effectively reopened the judgment. Justice Sullivan (then Judge) in speaking for the court allowed the untimely filing and stated that "the Workmen's Compensation *547 Division has the power inherent in all tribunals to reopen judgments in instances of fraud, mistake, inadvertence and the like." Here there was an apparent mistake not to allege compensability of the auto accident.
This was not a new accident requiring a new petition but rather a change in her condition flowing from the December 27, 1968 accident. The work-connected accident of December 27, 1968 was the cause of her journey to and from the doctor's office on March 9, 1969. As respondent forcefully argued, the latter accident was a temporary or permanent aggravation of the pre-existing conditions. Thus, it was nothing more than a sequel to the original work-connected injuries. Here the compensable accident was on December 27 and the incident on March 9 was an alteration in the injuries.
The law is well-established that an amendment to an original claim petition will not generally be held to state a new cause of action if the facts alleged show the same wrong with respect to the same transaction or if the gist of the action or the subject of the controversy remains the same. N.J.S.A. 34:15-51; Granahan, supra; Russo v. Wright Aeronautical Corp., 1 N.J. 417. Although strict compliance with filing details is not always necessary, however, it is essential that an amended petition be filed if petitioner so desires. Procedural fairness and avoidance of the elements of surprise are important considerations. N.J.S.A. 34:15-1 et seq.; D'Agostino v. Reliance Picture Frame Co., 15 N.J. 537 (1954).
Amendments to the claim petition should be freely granted to guard against a substantial miscarriage of justice. R. 4:9-1. As Judge Halpern noted in Tackling v. Chrysler Corp., 77 N.J. Super. 12 (Law Div. 1962),
... "courts should be liberal in allowing amendments to save actions, if possible, from the bar of the statute of limitations" and should disregard technical objections in the effort "to determine the real issues on their merits and to do substantial justice between litigants." [at 16].
*548 The amendment will relate back to the original filing on March 3, 1969. R. 4:9-3 provides that when the claim asserted in the amendment arose out of the conduct, transaction or occurrence set forth in the original petition, the doctrine of relation back applies even though the amendment refers to an additional date of occurrence. Thus, we conclude that the March 9 accident was an occurrence that arose out of the original accident.
It will indeed be difficult for respondent to claim prejudice by surprise in allowing the amendment since it was notified of both accidents almost immediately after their occurrences. At trial respondent had thoroughly investigated the auto accident and the injuries alleged to be related thereto. Petitioner and doctors called as witnesses on her behalf were thoroughly examined based upon the interrogatories and depositions of petitioner. Authorized medical treatment for the December 27 accident and temporary disability payments were terminated within a very short period after March 9.
Even though we have decided that, in general, an accident is compensable when it occurs while going to or coming from the office of an authorized treating physician, we perceive several sets of circumstances where a petitioner may not recover a favorable judgment. For example, and solely by way of illustration, the accident may occur many hours after leaving the doctor's office and petitioner may have spent the afternoon drinking in a tavern, race track or casino. In other words, the respondent may be able to successfully establish a valid defense, such as substantial deviation, that would preclude recovery by petitioner. Since we are unable to discern from the record whether respondent has a valid defense, the ultimate decision as to whether petitioner should recover for the March 9 accident must abide the remand.
Accordingly, the order of the judge of compensation vacating the order approving settlement is affirmed. The judgment of the judge of compensation finding no permanent disability is vacated and remanded to the Division of Workers' Compensation with the following instructions:
*549 (1) That petitioner file an amended petition alleging that the March 9 accident was compensable;
(2) That respondent be permitted to file an amended answer;
(3) That additional evidence be taken if necessary and considered in conjunction with the evidence previously submitted;
(4) The judge of compensation shall make factual and legal conclusions necessary to dispose of the issues of affirmative defenses, medical treatment, temporary and permanent disabilities and credits to respondent pursuant to N.J.S.A. 34:15-40.
We do not retain jurisdiction.