262 N.J. Super. 422 (1993)
621 A.2d 79
TENNIS CLUB ASSOCIATES, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
PLANNING BOARD OF THE TOWNSHIP OF TEANECK, DEFENDANT-APPELLANT, CROSS-RESPONDENT, AND TOWNSHIP OF TEANECK, INTERVENING-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1993.
Decided March 5, 1993.
*425 Before Judges COLEMAN, J.H., SHEBELL and A.M. STEIN.
Edward J. Trawinski argued the cause for appellant, cross-respondent, Planning Board of the Township of Teaneck (Schenck, Price, Smith & King, attorneys; Mr. Trawinski and Douglas S. Brierley on the brief).
E. Steven Lustig argued the cause for respondent, cross-appellant, Tennis Club Associates (Goodman & Lustig, attorneys; Mr. Lustig on the brief).
Michael B. Kates argued the cause for Intervening-appellant Township of Teaneck (Nashel, Kates, Modarelli, Nussman, Rapone & Ellis, attorneys; Mr. Kates of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
This is an appeal and cross-appeal from a judgment modifying the defendant Planning Board's resolution granting plaintiff's final site plan approval. The central issue raised in the appeal and cross-appeal is whether the final approval improperly modified significant conditions specified in the preliminary site plan approval respecting off-tract improvements.

I
The case has an extensive procedural history. Plaintiff owns Lots 4 and 5 in Block 707 located in Teaneck, New Jersey. The appeal focuses on Lot 5 consisting of 3.8 acres which has been used as a tennis club since the 1960's. Lot 4 is improved with a vacant building. Plaintiff purchased Lots 4 and 5 in December 1986 for $3,170,000.
On January 14, 1987, plaintiff applied for preliminary site plan approval for the 3.8 acre Lot 5, on which plaintiff proposed to build a three-story building and an underground parking *426 garage. The first floor would consist of slightly less than 40,000 feet of retail space designed for a supermarket, and the second and third floors would have nearly 80,000 square feet of office space. At the time, the property was located in a B-1 business district. Lot 5 is located in the southeastern end of Teaneck's busy commercial district. The principal roadways providing access to the site are Cedar Lane, Windsor Road and Front Street.
On February 26, 1987, the township's planning board approved the preliminary site plan for the on-site improvements, and on May 28, 1987, the planning board approved a plan for off-tract improvements. The planning board found that the supermarket-office complex required no variances. However, neighbors challenged the approval, and the Law Division set it aside after concluding that plaintiff needed two variances. Plaintiff appealed the Law Division decision, and on December 15, 1988, the Appellate Division reversed, concluding that no variances were required. Ernst v. Tennis Club Associates, No. A-2691-87.
Plaintiff then sought final site plan approval, filing its application on February 11, 1989. On June 7, 1990, the planning board granted final site plan approval for the supermarket-office complex on Lot 5. Up to this point, plaintiff had not objected to constructing the off-tract improvements or the requirement for a developer's agreement and bond. Plaintiff did, however, inform the planning board prior to issuance of its final site plan approval resolution that it had no responsibility for acquiring any off-tract land required to make any off-tract roadway changes. Plaintiff also presented evidence to the planning board concerning the roadway design for the off-tract improvements before the final approval. The planning board imposed substantial off-tract improvements in the final site plan approval.
On July 20, 1990, plaintiff filed a verified complaint in lieu of prerogative writs which challenged the legality of several of *427 the conditions contained in the final site plan approval. In Count One plaintiff sought the deletion of these imposed conditions, and in Count Two plaintiff sought damages from the planning board on the ground that the planning board illegally imposed conditions that were impossible to fulfill. The planning board filed an answer on August 27, 1990. Pursuant to the pretrial order of October 17, 1990, Count Two of the complaint was severed by order dated December 10, 1990.
On May 8, 1991, the trial judge entered judgment under Count One, deleting from the final site plan approval five conditions he found were not contained in the preliminary site plan approval. The judgment directed that plaintiff was to receive a proposed Developer's Agreement and bonding requirement from the Township of Teaneck within 30 days. The judgment also acknowledged that plaintiff's claims for damages under Count Two had been severed.
Defendant planning board has appealed, and plaintiff has cross-appealed. We granted the Township of Teaneck leave to intervene. This appeal is interlocutory because Count Two of the complaint, which seeks damages, remains undecided. Jones v. Jones, 242 N.J. Super. 195, 210, n. 2, 576 A.2d 316 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990); Ibberson v. Clark, 182 N.J. Super. 300, 302-03, 440 A.2d 1157 (App.Div. 1982). However, we now grant leave to appeal nunc pro tunc in the interest of justice, R. 2:4-4(b)(2), and because the claim for damages may not be well founded in view of our decision in Anastasio v. West Orange Tp. Planning Bd., 209 N.J. Super. 499, 507 A.2d 1194 (App.Div.), certif. denied, 107 N.J. 46, 526 A.2d 136 (1986).

II
Defendant and intervenor contend that the Law Division erred when it found that the final site plan approval improperly (1) required plaintiff to acquire privately owned and municipally owned land needed to build off-tract improvements, (2) required *428 plaintiff to complete off-tract improvements before commencing on-site construction, and (3) voided the preliminary site plan approval if any of the off-tract improvements were not installed.
The preliminary site plan approval respecting off-tract improvements required plaintiff to perform the following:
1. Construction of the Windsor Road extension/Cedar Lane underpass to connect with Water Street;
2. Reconstruct the intersection of Beverly Road and Windsor Road;
3. Redesign Front Street at its intersection with Cedar Lane so as to discourage and prohibit left turns from Front Street on to Cedar Lane and from Cedar Lane on to Front Street;
4. Redesign the intersection of Windsor Road and Grayson Place/Sagamore Avenue to provide two lanes on Windsor Road and westbound approaches of the intersection and a two or three phase traffic signal operation;
5. Construction of Water Street to be 40 feet wide, curb-to-curb between Conrail's right-of-way and Front Street. The property required which was owned by plaintiff was regarded as "an on-site improvement," but the property required which was not owned by plaintiff was regarded as "an off-tract improvement";
6. Construction of Alma Terrace between Chestnut Avenue and Front Street to accommodate two-way traffic flow and installation of stop signs on the east/west approaches at the cross streets with Chestnut Avenue and Elm Avenue; and
7. Resurfacing of Front Street from Water Street to the south side of North Street.
The resolution concerning the preliminary site plan approval further provided that "as a condition of preliminary site plan approval," the applicant "shall be obligated to install, at its sole cost and expense, all of the off-tract improvements designated above." The methodology for compensating the applicant for *429 that portion of the allocated cost of improvements which will benefit properties outside the development "will be determined by means of an Assessment Commission to be convened by the Governing Body...." The planning board required the applicant to enter into a satisfactory Developer's Agreement "acknowledging and confirming its responsibility to install the off-tract improvements and posting sufficient bond" before any development permits would be issued.
Thus, the planning board contemplated that these off-tract improvements would benefit other properties, and therefore plaintiff would be entitled to recoup some of its expenditures. However, plaintiff first had to make the installations and improvements of the road system and then seek reimbursement from an assessment commission.
During hearings on the application for final site plan approval respecting off-tract improvements, T. & M. Associates, a traffic engineering firm, retained by the planning board to examine the off-tract improvements, estimated an off-tract construction cost of approximately one million dollars, a property acquisition cost of $655,000 for the Knights of Columbus property, an unknown amount for the cost of acquiring approximately 8,500 square feet of Conrail property, and an unknown amount for the cost of acquiring approximately 2,500 square feet of a privately owned parking lot near Water Street. Subsequent unofficial estimates are much higher. In addition, at least one of the road improvements (the Alma Terrace extension) would run through a municipally owned parking lot. A Knights of Columbus representative told the board that the organization would not surrender its property without a fight, and that it had already consulted with an attorney. This highlights plaintiff's objection to any requirement that plaintiff, rather than the township, should acquire title to the land needed for off-tract improvements.
The planning board's resolution of the final site plan approval, adopted on June 7, 1990, among other things, required *430 plaintiff to persuade the governing body to acquire the private property by condemnation, required installation of all off-tract improvements before issuance of development permits for any on-site construction, and declared that "the within conditional site plan approval shall be null and void" if any one of the off-tract improvements could not be completed. These are the conditions in the final site plan approval which significantly impact this appeal, cross-appeal and the pending claim for damages.
On September 18, 1990, about two months after plaintiff filed this complaint, the governing body met to consider whether it would assist plaintiff in complying with the conditions for off-tract improvements by condemning certain private property and by making municipal property available. Members of the governing body were opposed to the development, and were against either condemning private property or making municipal property available for construction of the road improvements mandated by the planning board. Rather, members decided to allow the courts to resolve the case. The governing body adopted the following resolution on October 9, 1990:
WHEREAS, Tennis Club Associates (hereinafter "TCA") is responsible for acquiring the Knights of Columbus property, a portion of the Conrail right-of-way and portions of other properties; and
WHEREAS, no proof has been furnished by TCA that it has made such an effort or that it is in a position to make such acquisitions;
NOW, THEREFORE, BE IT RESOLVED by the Township Council of the Township of Teaneck, that the Township Council declines to accede to the requests of Tennis Club Associates as set forth in its letters of June 25, 1990 and August 38, 1990, on the grounds that such a request is premature at best without a bona fide effort on the part of TCA to acquire these properties.
The trial judge concluded that his scope of review was plenary because the issues raised required a determination of what powers were vested in the planning board by the Municipal Land Use Law (MLUL). He found that certain conditions imposed in the final site plan approval altered the conditions imposed in the preliminary site plan approval contrary to the MLUL. The judge, therefore, modified the final site plan approval resolution as follows:

*431 (1) The last sentence of Paragraph 49 of the Final Site Plan Resolution PB-42-90 which states:
"In satisfaction of the conditions imposed herein, the burden is on the applicant to petition the governing body and persuade it to condemn the necessary property(ies)."
is hereby stricken and removed from Resolution PB-42-90, and may not be imposed upon plaintiff Tennis Club Associates (hereinafter "TCA").
(2) The following language contained in Paragraph 50 of the Final Site Plan Resolution PB-42-90:
"If any one of the off-tract improvements cannot be fulfilled, this Board would not have granted preliminary or final site plan approval. The Planning Board further finds and concludes that sound planning, public safety, and the best interest of the public, generally, demand that all these off-tract improvements be made."
is hereby stricken and removed from Resolution PB-42-90 to the extent that the aforesaid language from paragraph 50 imposes a condition upon TCA, and may not be imposed as a condition upon TCA.
(3) The condition contained in Paragraph 51(A) of the Final Site Plan Resolution PB-42-90 which states:
"Installation of the following off-tract improvements, all of which must be satisfied before the issuance of any on-site development permits, including but not limited to footings, foundation and building permits."
is hereby stricken and removed from Resolution PB-42-90 and may not be imposed upon TCA.
(4) The condition found at the end of Paragraph 51(A) on Page 9 of the Final Site Plan Resolution PB-42-90 which states:
"In the event that any one of the above listed off-tract improvements cannot be made, or any other condition of this resolution is not fulfilled, the within conditional site plan approval shall be null and void."
is hereby stricken and removed from Resolution PB-42-90, and may not be imposed upon TCA.
(5) The condition contained in Paragraph 51(C) of the Final Site Plan Resolution PB-42-90 which states:
"The issuance of building permits for construction of any on-site building is conditioned upon the completion and final acceptance of all on-site and off-tract improvements."
is hereby stricken and removed from Resolution PB-42-90 and may not be imposed upon TCA.
(6) The conditions contained in the site plan approval resolutions relating to the off-tract roadway improvements shall not be a prerequisite, and shall not preclude or delay TCA from obtaining on-site development permits including footings, foundation or building permits, except for the conditions concerning the Developer's Agreement and performance bond set forth below.
(7) TCA is to receive, within thirty (30) days of the date of this Judgment, a proposed developer's agreement and all bonding information and requirements from the Township of Teaneck. The Developer's Agreement shall provide that:

*432 (a) TCA install the off-tract roadway improvements (subject to its right of prorata reimbursement) which are contained in PB-42-90; and (b) TCA post the required bond, pursuant to Paragraph 51(F) of PB-42-99, not to exceed 120% of the estimated cost of installing the off-tract improvements which are contained in PB-42-90. The Developer's Agreement shall also provide that if the Township of Teaneck decides that any of the off-tract improvements contained in PB-42-90 should not be installed, or if the Township refuses to make the necessary property available to TCA to install any of the off-tract improvements, then the required bond shall be reduced accordingly, and TCA shall be relieved from constructing any such off-tract improvement.
(8) TCA shall be entitled to receive any and all development or building permits required for the construction of the on-site improvements upon: (a) TCA entering into the aforesaid Developer's Agreement, and (b) TCA posting the aforesaid bond.

III
The issues before the Law Division, and this court as well, are factual and legal: (1) whether conditions in the final site plan approval respecting off-tract improvements impermissibly altered any conditions contained in the preliminary site plan approval, and (2) whether the MLUL authorizes a planning board to require a developer to make off-tract improvements on lands not owned by the developer or the municipality. Judge Smith held correctly that the arbitrary and capricious standard did not govern resolution of the issues presented.
N.J.S.A. 40:55D-49(a) dictates that, except as to matters relating to public health and safety, "the general terms and conditions on which preliminary approval was granted shall not be changed, including ... off-tract improvements...." Also, N.J.S.A. 40:55D-42 provides that the standards for determining a developer's pro-rata share of off-tract improvements "shall not be altered subsequent to preliminary approval." Purely legal issues, such as those raised below, are to be decided by the court. Cherney v. Matawan Borough Zoning Bd. of Adj., 221 N.J. Super. 141, 144-45, 534 A.2d 41 ((App.Div. 1987); Sheston Oil Co. v. Avalon Planning Bd., 214 N.J. Super. 593, 598-599, 520 A.2d 802 (App.Div.), certif. denied, 107 N.J. 134, 526 *433 A.2d 199 (1987); Battaglia v. Wayne Tp. Planning Bd., 98 N.J. Super. 194, 202, 236 A.2d 608 (App.Div. 1967).
While the 1987 preliminary site plan approval respecting off-tract improvements obligated plaintiff to make the improvements at its costs and expense, it did not require plaintiff to acquire the off-tract property required to make the street improvements. Clearly, the planning board was aware that plaintiff did not own the off-tract land. Indeed, when it imposed the condition requiring the widening of Water Street, it stated "[t]he property needed for the balance of the widening near the corner of Front and Water Streets is owned by persons other than the developer and such construction and acquisition in order to widen Water Street is an off-tract improvement." (Emphasis added). N.J.S.A. 40:55D-41 permits acquisition costs to be added to installation costs in determining a developer's pro rata share for street improvements. However, that statute does not obligate a developer to acquire the non-owned property needed for off-site improvements. One good reason is that the private developer has no power to condemn such property. Furthermore, the developer is not required to go out and attempt to purchase such property, particularly when it is apparent that such efforts will likely fail or perhaps be counterproductive to the bona fide negotiations required of the condemnor. See N.J.S.A. 20:3-6. Even if the preliminary site plan had required plaintiff to acquire title to the property for off-site improvements, that would certainly be unreasonable and therefore unenforceable.
We also reject the planning board's contention that altering the sequence of construction by prohibiting on-site construction until completion of off-tract improvements was only a minor change in construction details. Since plaintiff has no power to acquire the land needed for off-tract improvements, the change could cause substantial delays not contemplated under the preliminary site plan approval, or could foreclose development altogether. Such a change wipes out the intent *434 embodied in N.J.S.A. 40:55D-49(a) designed to enable the developer to reasonably calculate its investments.
We have considered all of the issues raised in this appeal by the planning board in light of the record and applicable law, and we conclude that the judgment dated May 8, 1991 should be affirmed substantially for the reasons expressed by Judge Smith in his oral decision of April 22, 1991.

IV
The township contends that by allowing plaintiff to start on-site construction before completing the off-tract improvements, the township is forced to use public funds to acquire the necessary off-tract property to avoid allowing the business center of the township from being destroyed by the resulting traffic congestion. We find this contention to be unpersuasive.
The predicament the township finds itself in is self-created. The 1979 master plan recognized the traffic congestion in the Cedar Lane area and recommended a plan to solve it. That master plan recommended that development in that area be preceded by an extensive, as well as an expensive, road improvement project. A 1979 study of the Cedar Lane business district by Peter Abeles, a planner retained by the planning board, recommended "the development of the Front Street-Water Street area lying south of Cedar Lane" for new commercial development. The central idea was to strengthen the Cedar Lane business district. According to Abeles, "there was a recognition that if Cedar Lane were to continue to function as an important retail center, it had to expand in general; and that the Front Street area was one of the few, if any, areas which represented such an opportunity."
The 1979 master plan also recognized that expansion of the commercial district would exacerbate problems of traffic access and flow. Some planners recognized that in order to extend the business district into that area, the master plan should show the corresponding road improvements to include the businesses *435 in that section. Consequently, the circulation element of the 1979 master plan recommended a road improvement system which would complete a loop road around Cedar Lane, providing access to shopping and parking.
A 1985 update of the master plan, itself a comprehensive document, continued to recommend strengthening the Cedar Lane commercial area and improving the road system to accomplish that result. Additionally, the 1985 plan contained something new  a recommendation that the Front Street-Water Street area allow "a mixed use development, incorporating residential and retail commercial activities." Bringing additional people into the immediate area, especially within walking distance of Cedar Lane, would help the merchants along Cedar Lane. The 1985 update recognized the traffic problems that might be created in implementing its recommendation, and so it continued to support the concept of a loop system to relieve traffic congestion adjacent to plaintiff's property. The 1985 update was reexamined in April 1986, and the recommendations of the 1985 update were reaffirmed. Despite these recommendations, the township took no action. Instead, the planning board and the township seek to impose that responsibility upon plaintiff.
Contrary to the township's assertion, the judgment under review does not force it to do anything. Thus, the holding in 181, Inc. v. Salem County Planning Bd., 140 N.J. Super. 247, 249, 356 A.2d 34 (App.Div. 1976) has no application to this case. The Teaneck governing body has the discretion to proceed with the plan modified by the judgment under review, to eliminate the off-tract improvements by refusing to acquire any private property required for the off-tract improvements, or to control the anticipated traffic congestion in some other way. To be sure, site plan approval for permitted uses cannot be denied by the planning board because of off-site traffic congestion. Dunkin' Donuts of N.J. v. North Brunswick Tp. Planning Bd., 193 N.J. Super. 513, 515, 475 A.2d 71 (App.Div. 1984).
*436 Beyond that, the township can ameliorate its alleged financial bind by choosing to finance the off-tract improvements through the assessments procedure sanctioned by N.J.S.A. 40:56-1 to 56-51. See also Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582, 599, 334 A.2d 30 (1975); Deerfield Estates v. Tp. of East Brunswick, 60 N.J. 115, 122-23, 286 A.2d 498 (1972).

V
In its cross-appeal, plaintiff contends that the requirement for it to install the off-tract road improvements rather than simply pay its pro-rata share violates N.J.S.A. 40:55D-42. Plaintiff also contends that requiring it to install the improvements in the final site plan approval violates the preliminary site plan approval.
We reject plaintiffs assertion that the preliminary site plan approval did not require it to construct the off-site improvements. As we noted earlier, the planning board's resolution provided that the plaintiff-applicant "shall be obligated to install, at its sole cost and expense, all of the off-tract improvements." Independent of the above resolution, plaintiff expressed its willingness to construct the required off-tract improvements until the final site plan was approved.
We agree with Judge Smith that "whether TCA [plaintiff] can or cannot be compelled to install extensive off-tract road improvements extending a considerable distance from TCA's site and involving multiple roadways need not be specifically addressed in light of TCA's continued willingness to do so."
Although we harbor serious reservations as to whether plaintiff can be compelled to make the required off-tract improvements, the issue is not ripe for determination. The plaintiff's willingness to make the off-tract improvements undoubtedly influenced the planning board to make that a condition of preliminary site plan approval. But there have been inordinate delays and attendant expenses clearly not anticipated when *437 plaintiff expressed its willingness to make the installations if the township acquired the land. In view of the fact that for more than two and one-half years plaintiff was willing to make the off-tract improvements, we are persuaded that the issue should not be decided as an abstract proposition of law. Indeed, the trial judge in his oral opinion noted that if there were further "untoward delays, I don't view TCA as committed to the installation or payment."
In addition, the judgment provides, if the township decides not to acquire the land, then the issue becomes moot. We direct that if the township, on the other hand, decides to acquire the land, then plaintiff shall be permitted to seek a determination in the Law Division as to whether it can and should be compelled to make the installation of the off-tract roadway improvements, given the inordinate delays and changing economic circumstances. Plaintiff shall also be entitled to litigate the maximum dollar amount it can reasonably be required to spend for installation since N.J.S.A. 40:55D-42 has incorporated a standard of reasonableness. We also direct that should the township decide to acquire the property necessary for the off-tract improvements, plaintiff shall be required to pay only its pro rata share of the acquisition costs.
The judgment dated May 8, 1991 is affirmed. The matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.