652 A.2d 232

DAVID M. CARBERRY, PETITIONER–RESPONDENT, v.
STATE OF NEW JERSEY, DIVISION OF STATE
POLICE, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 1994—Decided January 31, 1995.

Before Judges HAVEY, BROCHIN and CUFF.

*Linda A. Lockard–Phillips,* Deputy Attorney General, argued the cause, for appellant (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Lockard–Phillips* on the brief).

*Joseph E. Kelley, III,* argued the cause, for respondent (*Ingram & Kelley,* attorneys; *Mr. Kelley* on the letter-brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

In this workers' compensation case, petitioner, a sergeant with respondent New Jersey State Police, on sick leave for a condition not connected with his employment, was required by respondent to be examined by a State Police physician for the purpose of obtaining medical clearance to return to work. On his way home from the doctor's office petitioner sustained injuries as a result of

an automobile accident. The judge of compensation concluded that the accident arose out of and in the course of petitioner's employment because petitioner "was following the direction of his superiors" by reporting to the doctor's office for medical clearance to return to his job.[1] We disagree and reverse.

Petitioner was diagnosed as suffering from multiple sclerosis in 1978. In January 1992, he began experiencing blurry vision. When he reported to the state trooper barracks for work, he complained about his vision problem. He was placed off duty and was directed to report to Dr. Vivona, a cardiologist assigned by the State Police to examine troopers who are placed on sick leave.

A written State Police "S.O.P." requires any trooper who is absent from work for three consecutive working days because of a medical condition to submit to a physical examination by a "Division Physician." The Division thereupon places the trooper on full-duty status, temporary-duty status, or temporary off-duty status based on his or her condition. The Division physician determines, upon subsequent examination, when the trooper is able to resume full-duty status.

Petitioner resides in Manahawkin, a township located in southern Ocean County. On January 15, 1992, Dr. Vivona, whose office is in Brick Township, Ocean County, examined petitioner and certified in a "Division Physician's Report" that petitioner was suffering from a physical condition which temporarily prevented him from performing "in any capacity within the organization." Dr. Vivona also referred petitioner to another physician, Dr. Bhat, who prescribed Prednisone as a method of controlling petitioner's

---

[1] After deciding the compensability issue, the judge bifurcated the issue of partial permanent disability and, as of the date of oral argument, had not entered a final award. Since there is no final judgment as to all issues, respondent had no appeal as of right. See R. 2:2–3(a). However, for purposes of judicial expediency, we grant leave to appeal *nunc pro tunc* to respondent and address the issues. See *Tennis Club Assocs. v. Planning Bd.*, 262 N.J.Super. 422, 427, 621 A.2d 79 (App.Div.1993). But cf. *Della Rosa v. Van–Rad Contracting Co.*, 267 N.J.Super. 290, 293–94, 631 A.2d 557 (App.Div.1993) (award of temporary benefits by judge of compensation is appealable as of right).

multiple sclerosis symptoms. Dr. Vivona also referred petitioner to Dr. Cook, a specialist in the treatment of multiple sclerosis.

In adherence to State Police policy, petitioner reported to Dr. Vivona periodically for the purpose of examination to determine if he was capable of returning to work. On December 21, 1992, after examining petitioner, Dr. Vivona filed another "Division Physician's Report" stating that petitioner was not yet capable of returning to work because of his condition. Dr. Vivona directed that petitioner return for further examination in "three weeks."

Petitioner was driven by his wife to Dr. Vivona's office on January 18, 1993. He was still on off-duty status and continued to have problems with his eyes. Because of personal problems, Dr. Vivona was unable to examine petitioner on that date. His office instructed petitioner to return later in the week. On the way home from Dr. Vivona's office, petitioner was involved in the automobile accident which caused his injuries.

■ The issue before us is whether petitioner's visit to Dr. Vivona's office arose "out of and in the course of" petitioner's employment with the State Police. *N.J.S.A.* 34:15–7. In resolving that issue, we begin by noting that the visit was not for the purpose of treatment for a prior work-related injury. Dean Larson, in his treatise, explains that "[w]hen an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office *occasioned by a compensable injury,* the additional injuries are generally held compensable...." 1 Larson, *The Law of Workmen's Compensation* § 13.13 at 3–564 (1990) (emphasis added). This view is bottomed on Dean Larson's "quasi-course of employment" concept, that is, activities undertaken by the employee:

> following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury.
>
> [Larson, § 13.11(d) at 3–542.]

We adopted Dean Larson's view in *Camp v. Lockheed Electronics, Inc.,* 178 *N.J.Super.* 535, 543–44, 429 *A.*2d 615 (App.Div.), *certif. denied,* 87 *N.J.* 415, 434 *A.*2d 1090 (1981), where petitioner was injured in an automobile accident returning home from a physician who was treating her for a prior work-connected injury. A majority of jurisdictions have also embraced the concept. *See e.g. Southern California Rapid Transit Dist., Inc. v. Workers' Compensation Appeals Bd.,* 23 *Cal.*3d 158, 151 *Cal.Rptr.* 666, 668–69, 588 *P.*2d 806, 808–09 (1979); *Telcon, Inc. v. Williams,* 500 *So.*2d 266, 269–70 (Fla.Dist.Ct.App.1986), *review denied,* 508 *So.*2d 15 (Fla.1987); *Charles N. Clark Assocs. Ltd. v. Dependents of Robinson,* 357 *So.*2d 924, 928–29 (Miss.1978). The rationale uniformly applied by these cases is that the employee's trip to the doctor's office is necessitated by the employer's statutory duty to provide medical treatment for the prior work-related accident, and the employee's concomitant duty to submit to such reasonable treatment. *Southern California Rapid Transit Dist., Inc. v. Workers' Compensation Appeals Bd.,* 151 *Cal.Rptr.* at 669, 588 *P.*2d at 809.

Here, the "quasi-course of employment" concept is not applicable because petitioner was not being treated by Dr. Vivona for a prior work-connected injury. It is undisputed that petitioner was suffering from multiple sclerosis, a condition neither related to nor aggravated by his work duties. Therefore, he was under no statutory duty to undergo treatment. *See Anderson v. Chatham Elecs.,* 70 *N.J.Super.* 202, 205–06, 175 *A.*2d 256 (App.Div.1961), *certif. denied,* 36 *N.J.* 303, 177 *A.*2d 489 (1962) (injury not compensable where petitioner's accident occurred while she was on the way home from doctor's visit to obtain clearance for return to work for a medical condition not work-connected).

■ Nevertheless, petitioner argues that he was on a "special mission" when he traveled to the State Police-appointed physician for his physical examination. The argument must be examined in the context of the 1979 amendment to the Workers' Compensation Act, *P.L.*1979, *c.* 283, which for the first time provided a definition of "employment," as commencing "when an employee arrives at

the employer's place of employment to report for work and [terminating] when the employee leaves the employer's place of employment...." *N.J.S.A.* 34:15–36. The definition was added to sweep away the judicially-created exceptions to the going and coming rule, a rule which precludes an award of compensation for injuries sustained during routine travel to and from an employee's regular place of work. *Zelasko v. Refrigerated Food Express*, 128 *N.J.* 329, 334–35, 608 *A.*2d 231 (1992). The definition "sharply curtailed" compensation for off-premises accidents and removed "from compensability certain cases heretofore held compensable where special hazards existed en route to the employer's premises, [and] off-premises injuries sustained during lunch hour." *Id.* at 335, 608 *A.*2d 231 (quoting Alfred J. Napier, *Impact of the Reform Act of 1980*, 96 *N.J. Lawyer* 17, 18 (Summer 1981)).

Since the 1979 amendment, our courts have been uniformly obedient to the legislative will in imposing the time and space "premises rule," as defined by the statute. Generally the cases involve employees injured beyond the outer limits of the work place, before getting to or after leaving the job site. *See Novis v. Rosenbluth Travel*, 138 *N.J.* 92, 96, 649 *A.*2d 69 (1994); *Zelasko v. Refrigerated Food Express*, 128 *N.J.* at 338–39, 608 *A.*2d 231; *but see, Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 104–06, 543 *A.*2d 45 (1988) (injury compensable when occurring on parking lot controlled by employer). Others have denied compensability because the employee is injured while involved in personal activities unrelated to his or her direct employment duties as part of a job-related journey. *See Walsh v. Ultimate Corp.*, 231 *N.J.Super.* 383, 390–91, 555 *A.*2d 731 (App.Div.), *certif. denied*, 117 *N.J.* 92, 563 *A.*2d 849 (1989); *Ohio Casualty Group v. Aetna Casualty & Surety Co.*, 213 *N.J.Super.* 283, 289–90, 517 *A.*2d 166 (App.Div. 1986); *Mangigian v. Franz Warner Assoc., Inc.*, 205 *N.J.Super.* 422, 428, 501 *A.*2d 179 (App.Div.1985).

Petitioner contends that the statutory "premises rule" does not apply because his trip to Dr. Vivona's office was mandated by a term and condition of his employment. Thus, he argues, it falls

within the "special mission" exception to the going and coming rule. Dean Larson defines the "special mission" or "special errand" rule as follows:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.
>
> [Larson, § 16.11 at 4–204 (footnotes omitted).]

Prior to the 1979 amendment to the statute, the "special mission" exception to the going and coming rule was firmly in place in New Jersey. *See Briggs v. American Biltrite*, 74 *N.J.* 185, 192, 376 *A.*2d 1231 (1977) (injury while en route to work a Sunday overtime shift); *Mikkelsen v. N.L. Indus.*, 72 *N.J.* 209, 218, 370 *A.*2d 5 (1977) (injury while en route home from union meeting); *Binet v. Ocean Gate Bd. of Educ.*, 90 *N.J.Super.* 571, 573, 218 *A.*2d 869 (App.Div.), *certif. denied*, 47 *N.J.* 243, 220 *A.*2d 115 (1966) (teacher killed while returning home after P.T.A. meeting).

Although *N.J.S.A.* 34:15–36 narrowly defines employment in the context of time and space limitations, the "special mission" exception survives the 1979 amendment. *See Zelasko*, 128 *N.J.* at 336, 608 *A.*2d 231. The statutory exception is derived from the proviso \in *N.J.S.A.* 35:15–36 which states that:

> when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer....

In interpreting this statutory exception, we must keep in mind the overriding purpose of *N.J.S.A.* 34:15–36: "to impose upon off-site accidents a more restrictive standard of compensability." *Ehrgott v. Jones*, 208 *N.J.Super.* 393, 397, 506 *A.*2d 40 (App.Div.1986). Indeed, the specific language of the exception itself suggests an intention to narrow the reach of the pre-amendment cases, or at least to caution against expansion in a manner which conflicts with the legislative intent to curtail sharply compensability for off-site accidents. *See Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.*

at 101 n. 4, 543 *A.*2d 45 (statutory exceptions under *N.J.S.A.* 34:15–36 "were derived from, and in some cases may have narrowed, pre–1979 case law exceptions to the going and coming rule").

In view of the legislative mandate, we cannot conclude that petitioner's visit to Dr. Vivona's office was a "special mission." We recognize, as petitioner has argued, that he was required by respondent to make the trip in order to obtain medical clearance to return to full-time duty. However, in our view, this fact alone does not place the trip within the special mission exception. It cannot be argued, at least persuasively, that when respondent placed petitioner on sick leave, petitioner was "required by the employer to be away from the employer's place of employment" as intended by *N.J.S.A.* 34:15–36. More importantly, petitioner was not "engaged in the direct performance of [state trooper] *duties* assigned or directed by the employer." *Ibid.* (emphasis added). He was simply directed to be examined by Dr. Vivona to determine if his medical condition, not work related, required him to remain on sick leave or allowed him to return to work.

Moreover, respondent did not dictate, nor did it have any control over the course of petitioner's travel, or manner by which he was transported to Dr. Vivona's office. Petitioner was free to drive himself, if able, or to request a friend or family member to drive him. The record also suggests that there was some flexibility as to the exact time for petitioner's appointments with Dr. Vivona so as to accommodate petitioner's personal activities. For example, on petitioner's December 21, 1992 visit, Dr. Vivona's office told him to return in "three weeks."

Further, although the trip from Manahawkin to Brick Township may have been an inconvenience, there was no particular "hazard" attending the trip. *See* Larson, § 16.11 at 4–204. Thus, the facts are readily distinguishable from *Nemchick v. Thatcher Glass Mfg. Co.,* 203 *N.J.Super.* 137, 495 *A.*2d 1372 (App.Div.1985), cited by petitioner. In *Nemchick,* the employee was involved in the "direct performance of [his] assigned duties" when, after his regular

eight-hour shift, he was unexpectedly requested by his supervisor to journey fifty miles to an unfamiliar place to perform a work-connected task. *Id.* at 143, 495 *A.*2d 1372. The off-site job required ten hours to accomplish. *Ibid.* The employee was injured on his homeward journey after approximately twenty-seven sleepless hours. *Ibid.* In holding that the trip was a "special mission," we observed:

> The inconvenience, disruption of petitioner's normal daily routine, and, no doubt, enhanced exposure to hazard because of weariness and fatigue would not have ensued but for the work-related assignment, the benefits of which inured exclusively to respondent.
>
> [*Ibid.*]

No such "enhanced exposure to hazard" due to "weariness and fatigue" is implicated here.

Finally, the benefits of the examination by Dr. Vivona did not "inure[ ] exclusively to respondent." Concededly, the mandatory examination procedure permits the Superintendent of the State Police to monitor troopers on sick leave to assure their speedy return to full-time work, and to prevent the premature return of a physically incapacitated trooper to the vigors of his or her duties. But these benefits are too remote to turn petitioner's compliance with the directive into a "special mission." *See Anderson v. Chatham Elecs.,* 70 *N.J.Super.* at 208, 175 *A.*2d 256. Moreover, the medical examination procedure benefits the state trooper as well, since it allows his or her continuance on sick leave if his or her condition persists, or accelerates the return to full-time duty if the condition has diminished. Indeed, here petitioner benefitted personally from Dr. Vivona's examination, since the doctor referred him to private specialists for treatment of his multiple sclerosis condition despite the fact that the condition was not related to petitioner's work. In short, the inconvenience in making the trip to Dr. Vivona's office was not "sufficiently substantial to be viewed as an integral part of the service itself." Larson, § 16.11 at 4–204.

Reversed.