*Rina Calvo v. Montgomery County, Maryland*, No. 48, September Term, 2017, Opinion by Adkins, J.

**WORKERS' COMPENSATION — TRAVELING EMPLOYEE:** An employee who was required to report from her home to a different work site was not a traveling employee under *Mulready v. Univ. Research Corp.*, 360 Md. 51 (2000), because traveling employee status generally applies to employees who are injured on premises where the employee is staying to carry out the employer's business.

**WORKERS' COMPENSATION — GOING AND COMING RULE — SPECIAL MISSION OR ERRAND EXCEPTION:** Determining whether an employee's journey is sufficiently special to satisfy the special mission or errand exception to the going and coming rule requires consideration of: (1) the relative regularity or unusualness of the particular journey in the context of the employee's normal duties; (2) the relative onerousness of the journey in comparison to the service to be performed at the end of the journey and other circumstances of the journey including the length and time of the journey, and whether the employee usually worked at that time; and (3) the suddenness with which the employee was called to work, or whether the call was made with an element of urgency.

**WORKERS' COMPENSATION — GOING AND COMING RULE — SPECIAL MISSION OR ERRAND EXCEPTION — SUMMARY JUDGMENT:** Employer's motion for summary judgment should not have been granted because employee's claim was not barred by the going and coming rule when the employee was required to attend an annual mandatory training on a day she did not typically work, the training was held at a different location than her usual work site, and the training was not regular in the context of her ordinary duties. From these facts, a trier of fact could reasonably infer that the special mission exception applied.

Circuit Court for Montgomery County
Case No.: 412413V
Argued: February 5, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 48

September Term, 2017

RINA CALVO

v.

MONTGOMERY COUNTY, MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.
Barbera, C.J., Greene, and Getty, JJ., dissent.

Filed: May 21, 2018

"Each case involving the going and coming rule and its exceptions must turn on its own particular facts." *Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 46 (1993). Rina Calvo was injured in a car accident while driving from her home to a mandatory work training on a Saturday—normally her day off. We consider whether the Circuit Court for Montgomery County should have granted summary judgment in judicial review proceedings of an order of the Workers' Compensation Commission ("Commission"). In so doing, we shed light on a complicated and factually-intensive exception to the going and coming rule: the special mission or errand doctrine.

## FACTS AND LEGAL PROCEEDINGS

Calvo has been employed by Montgomery County ("County") as a bus driver for approximately 20 years. Her regular work schedule is Monday through Friday, and she is based at the Silver Spring Depot. On May 6, 2015, Calvo received a letter notifying her that she was scheduled to attend an "important mandatory training" set for Saturday, May 16, 2015, at the Gaithersburg Depot. The notice stated that Calvo was not required to be in uniform to attend the "customer service class,"[1] and that the training was set to run from 8:00 a.m. to 4:30 p.m. The County required all employees to attend this training annually. En route to the training, Calvo was rear-ended by another car while waiting at a traffic light.

---

[1] The subject line of the training notice refers to the "WE Care Scheduled Training," and the notice refers to it as "the customer service class." During her testimony before the Commission, Calvo stated that it was "a mandatory class for the ADA" and a "customer service training." There is no other information in the record regarding the nature and content of the training.

Calvo filed a claim with the Commission, seeking compensation for injuries sustained in the rear-end collision. At the Commission hearing on October 30, 2015, Calvo testified about her injury, as well as the mandatory nature of the training. She believed that if she missed the training she would probably get suspended or be prevented from going back to work "full duty."[2] Before the Commission, the parties argued the applicability of the special mission exception. The Commission awarded compensation after finding that Calvo "sustained an accidental injury arising out of and in the course of employment . . . ."

The County sought judicial review of the Commission's Order in the Circuit Court for Montgomery County, and requested a jury trial. Shortly thereafter, the County filed a motion for summary judgment on grounds that the "going and coming rule" prohibited recovery—because accidental injuries sustained while going to or coming from work do not ordinarily arise out of and in the course of employment, and none of the exceptions to the rule applied. Calvo opposed the Motion, maintaining that compensation was proper under the special mission exception, or because she was a traveling employee. After a hearing, the Court granted the County's motion.

The Court concluded that as a matter of law, Calvo's accident fell within the going and coming rule, and that Calvo was not a traveling employee. The Court considered that Calvo was not compensated for her travel, it was an "annual, regular training" that was "part and parcel of her job," and it was not "out of the ordinary." It found that the training was "bus driver stuff," which involved "go[ing] over the rules of the road," and that the

---

[2] Calvo made up her missed training in October 2015.

2

change in location, work on a day off, and the difference in distance did not bring Calvo's case within the special mission exception.

In an unreported opinion, the Court of Special Appeals affirmed the Circuit Court's grant of summary judgment *Calvo v. Montgomery Cty.*, No. 1036, 2017 WL 2666161, at *8 (Md. Ct. Spec. App. June 21, 2017). The intermediate appellate court agreed that there was no dispute of material fact and concluded that the going and coming rule controlled. *Id.* at *4, 6.

We granted *certiorari* to resolve the following question:[3]

---

[3] Calvo presented the following questions, which we have consolidated and rephrased:

1. Where the Claimant/Petitioner prevailed before the Workers' Compensation Commission and a determination by the Commission is statutorily "presumed to be correct," and where the appellate courts have held that whether an injury "arose out of and in the course of employment" constitutes a question of fact, should the granting of summary judgment against the Petitioner be overturned and the appeal allowed to be heard by a fact finder?

2. Did the lower court commit error when it summarily found, without submitting it to a fact finder, that, the "special errand" exception to the "going and coming" rule cannot even be *considered*, notwithstanding that Petitioner was on her way to a different assignment, at a different work site, on her off day, at the direction of her Employer, and in the furtherance of her Employer's business, especially where 3 judicial/quasi-judicial bodies reached 3 different conclusions on the issue of whether the claim "arose out of and in the course of employment"?

3. Whether, given that Maryland case law holds that an injury is compensable when it occurs in a place the employee would not have been "*but for*" her employment and/or while engaged in an activity "*incidental*" to her employment, and Ms. Calvo was

3

Did the Circuit Court err in concluding as a matter of law that Calvo's injury did not arise out of and in the course of her employment, and granting summary judgment?

Our answer is yes.

## STANDARD OF REVIEW

Maryland Rule 2-501(a) permits a party to seek summary judgment at any time "on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." In reviewing a summary judgment motion, a court should not attempt to resolve factual issues, but only determine if there is a dispute of material fact sufficient to try the case. *Baltimore Cty. v. Kelly*, 391 Md. 64, 73 (2006). Even if "the relevant facts are undisputed, 'if those facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper.'" *Ashton v. Brown*, 339 Md. 70, 79–80 (1995) (quoting *Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 677 (1988)). We review a grant of summary judgment without deference, and construe the facts, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party. *Rockwood Cas. Co. v. Uninsured Emp'rs' Fund*, 385 Md. 99, 106 (2005).

---

involved in an accident only because she was travelling to training at the direction of, and for the benefit of, her Employer, did the lower courts err in finding, as a matter of law, that Petitioner's claim was not "in the course of" her employment?

(Emphasis in original).

4

## DISCUSSION

The Workers' Compensation Act ("Act") is intended to protect workers and their families through compensation for a loss of earning capacity due to workers' injuries that arise out of and in the course of employment. *See Howard Cty. Ass'n for Retarded Citizens, Inc. v. Walls*, 288 Md. 526, 531 (1980). The Act "is to be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes as remedial social legislation." *Tornillo*, 329 Md. at 48; *Roberts v. Montgomery Cty.*, 436 Md. 591, 603 (2014).

Maryland Code (1991, 2016 Repl. Vol.), § 9-501 of the Labor and Employment Article ("LE") provides that "each employer of a covered employee shall provide compensation in accordance with this title to . . . the covered employee for an accidental personal injury sustained by the covered employee . . . ." An "accidental personal injury" is an "accidental injury that arises out of and in the course of employment[.]" LE § 9-101(b).

LE § 9-737 permits a party to seek judicial review of Commission orders in circuit court. A party may request review on the record before the Commission, which we have described as similar to "judicial review of the final action of most state administrative agencies . . . ." *Kelly*, 391 Md. at 67. Alternatively, a party may select a "new evidentiary hearing and decision before a jury . . . ." *Id.* at 67–68; LE § 9-745(d). The latter is what the County requested, and so our review is "much like" that due a motion for summary judgment following "an original civil complaint brought in a circuit court." *Id.*

Regardless of the method of appeal, the Commission's decision is "presumed to be prima facie correct[,]" and "the party challenging the decision has the burden of proof." LE § 9-745(b). To prevail in judicial review, the appellant must overcome the statutory presumption. *Kelly*, 391 Md. at 76; LE § 9-745(b)(1). After the Commission issues an award to a claimant, "the burden of proof, which was borne by the claimant before the Commission, switches to the employer before the circuit court." *Kelly*, 391 Md. at 75–76. A successful claimant has no burden of production in judicial review—the Commission's decision may serve as the claimant's *prima facie* case. *Id.* at 76 (citing *General Motors Corp. v. Bark*, 79 Md. App. 68, 80 (1989)).

The parties raise perennial questions about the fact/law dichotomy inherent in review of summary judgments. Calvo contends that whether an accident arose out of and in the course of employment, the special mission exception, and her status as a traveling employee are questions of fact. Calvo maintains that summary judgment was improper because the County did not offer additional evidence in its motion for summary judgment, and the Commission's factual determinations are presumed correct. She relies on *Kelly*, 391 Md. at 80, for the proposition that a circuit court may not enter summary judgment against a claimant who prevailed before the Commission.

The County argues that summary judgment was proper because there is no material dispute of fact, the going and coming rule bars compensation as a matter of law, and the facts do not permit any other inferences. The County does not disagree that the Commission's decision is presumed *prima facie* correct but maintains that the presumption only applies if the issue on appeal is a question of fact, not of law. The County agrees that

6

an agency's interpretation of a statute it administers receives deference but observes that a court may always consider whether the agency made an error of law.

LE § 9-745(b)(1) provides that the Commission's decisions are presumed correct, but the presumption "does not extend to questions of law." *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 357 (2010); *Beyer v. Decker*, 159 Md. 289, 291 (1930). Although the Commission is entitled to deference in its interpretation of the statute it administers, we may still consider whether its legal conclusions were erroneous. *Holmes*, 416 Md. at 359; *W.M. Schlosser Co. v. Uninsured Emp'rs' Fund*, 414 Md. 195, 204 (2010).

The question of whether evidence before the Commission is legally sufficient to support its decision is a question of law. *Moore v. Clarke*, 171 Md. 39, 45 (1936). When the Commission's decision involves "consideration of conflicting evidence as to essential facts, or the deduction of permissible but diverse inferences therefrom, its solution of such conflict is presumed to be correct . . . ." *Id.* If the undisputed facts do not permit a conclusion, or any permissible inferences consistent with the Commission's award, the case will be resolved solely as a question of law. *Id.* at 46; *see also Hygeia Ice & Coal Co. v. Schaeffer*, 152 Md. 231, 235 (1927).

Cases involving the going and coming rule and its exceptions hinge on the specific facts of each case. *Tornillo*, 329 Md. at 46; *see also Reisinger-Siehler Co. v. Perry*, 165 Md. 191, 198 (1933) ("The question, therefore, whether a case is an exception to the general rule, depends upon its own particular facts."). But, as we explained in *Harrison v. Cent. Constr. Corp.*, 135 Md. 170, 180 (1919):

[t]he question as to whether an injury arose out of or in the course of employment is ordinarily, like negligence or probable cause, a mixed question of law and fact; but when the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the Court.

Contrary to Calvo's arguments, *Kelly* does not establish that summary judgment is **never** permissible against a prevailing claimant during judicial review of a Commission decision. *See* 391 Md. at 77–78. In *Kelly*, the employer sought judicial review of a Commission Order that awarded compensation after finding that a car accident at work aggravated an employee's old injury. *Id.* at 69–70. In circuit court, the employer moved for summary judgment, arguing that the case presented a complex medical question and the employee failed to provide sufficient medical evidence connecting his need for treatment with the car accident. *Id.* at 72. The employee maintained that a factual dispute over causation existed and opposed summary judgment on the basis of the Commission record and the presumption of correctness. The Circuit Court granted summary judgment. *Id.* at 72–73.

We determined that summary judgment was improper. The prevailing employee was entitled to rely on the Commission's determination of causation, and the employer was required to produce evidence establishing the lack of causation because, as the losing party, it bore the burdens of proof and production at summary judgment. *Id.* at 77. We held that there was sufficient evidence before the Commission to support the conclusion that the car accident aggravated the employee's old injury. *Id.* at 80. We explained that "'[t]he general rule in Workmen's Compensation cases is that where there is *any* evidence from which a

8

rational conclusion may be drawn, as opposed to the theory of prayer for a directed verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence.'" *Id.* (quoting *Jewel Tea Co. v. Blamble*, 227 Md. 1, 4 (1961) (emphasis in original)).

*Kelly* teaches us that summary judgment is improper against a prevailing party when the moving party does not carry its burden, or if there is any evidence that can rationally permit the Commission's factual determination. *Id.* With these principles in mind, we turn to the question of whether the Circuit Court improperly granted summary judgment for the County.

**Arises Out Of And In The Course Of Employment**

A claimant who seeks compensation must prove that the injury "both arose out of *and* in the course of the employment." *Montgomery Cty. v. Wade*, 345 Md. 1, 9 (1997) (emphasis in original). "'Arises out of' refers to the causal connection between the employment and injury." *Livering v. Richardson's Rest.*, 374 Md. 566, 574 (2003). We have adopted the positional risk test to determine if an injury arose out of employment. *Id.* at 575. Under this test, "'[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where he [or she] was injured.'" *Id.* (quoting A. Larson, *Workers' Compensation Law* § 3.05 (2002)) (emphasis in original).

In analyzing whether the injury occurred "in the course of employment" we consider "the time, place, and circumstances of the accident in relation to the employment." *Id.* at 576–77. "An injury is in the course of employment 'when it occurs during the period of

9

employment where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto.'" *Id.* at 577 (quoting *Wade*, 345 Md. at 11).

To determine whether Calvo's injury arose out of her employment, we consider whether Calvo would have been injured but for her employer's requirement that she attend the Saturday training. *Id.* The Circuit Court found that Calvo's injury did not arise out of her employment. The Court of Special Appeals applied the positional risk test, observing that the parties do not dispute that the travel was "sufficiently work-related" and that but for Calvo's obligation to attend the training, she would not have been traveling the route. *Calvo*, 2016 WL 2666161, at \*6. The parties do not dispute that Calvo ordinarily did not work on Saturdays, and that the training was mandatory. But for the County's requirement that she attend, Calvo would not have been driving when and where she was injured. Therefore, under the positional risk test, Calvo satisfies the "arises out of" requirement. *Livering*, 374 Md. at 575; *see also* 1 Clifford B. Sobin, *Maryland Workers' Compensation* § 6:1, at 158 (2017 ed.).

Whether Calvo's injury occurred in the course of her employment depends on the time, place, and circumstances of her injury relative to her employment. *Livering*, 374 Md. at 576–77. To fall within the Act, her injury must have occurred during her employment when she was in the performance of her duties or doing something incident to those duties. *Id.* at 577; *Wade*, 345 Md. at 11. The parties do not dispute that Calvo was traveling from her home to the Gaithersburg Bus Depot for training when she was injured. Rather, they dispute the legal character of this journey.

10

The County contends that the going and coming rule controls. Under this rule, employees' injuries sustained while going to or coming from work are not ordinarily in the course of employment. *Roberts*, 436 Md. at 606; *Tornillo*, 329 Md. at 44. Such injuries are not usually compensable because employees are responsible for ensuring their presence at work, and during the commute, they generally face the same hazards as other commuters. *Roberts*, 436 Md. at 606. Thus, the risks are not usually "directly attributable to a person's particular employment." *Morris v. Bd. of Educ. of Prince George's Cty.*, 339 Md. 374, 380 (1995). Applying this rule, the County reasons that Calvo should not receive compensation because she was traveling to work. We have, however, recognized several exceptions to the going and coming rule.[4] *See Tornillo*, 329 Md. at 44.

---

[4] We have enumerated these exceptions in *Board of Cty. Comm'rs for Frederick Cty. v. Vache*, 349 Md. 526, 532 (1998):

> 1. Thus, where the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. 2. Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. 3. The "proximity" exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. 4. Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable.

(Cleaned up). We have also recognized the "dual purpose" doctrine. *See Montgomery Cty. v. Wade*, 345 Md. 1, 13 (1997).

Calvo offers two reasons for why the Circuit Court should not have granted summary judgment. First, she argues that the special mission or errand exception to the going and coming rule applies, and therefore her injury arose out of and in the course of her employment. She also contends that she was a traveling employee. Because applying the traveling employee rule would bar the applicability of the going and coming rule, we address this argument first.[5]

## The Traveling Employee

Calvo argues that whether she was a traveling employee is a material question of fact. She contends that the Circuit Court erred in determining that the nature of her journey did not make her travel incidental to her employment. Calvo maintains that if she was indeed a traveling employee, then the going and coming rule would not apply at all, and the positional risk test applies to determine whether her injury occurred in the course of her employment. The County contends that the going and coming rule applies, and that Calvo was not a traveling employee because she was on her way to work, rather than staying at a different site for work, traveling between work sites, or on her employer's premises.

A traveling employee is "an employee who is required to travel away from . . . [an] employer's premises in order to perform his [or her] job." *Gravette v. Visual Aids Elecs.*, 216 Md. App. 686, 686–87 (2014). The seminal traveling employee case in Maryland is *Mulready v. Univ. Research Corp.*, 360 Md. 51 (2000). There, an employee for an

___

[5] The Court of Special Appeals decided that the going and coming rule controlled and did not address the applicability of the traveling employee rule and the positional risk test. *Calvo v. Montgomery Cty.*, No. 1036, 2017 WL 2666161, at *5 (Md. Ct. Spec. App. June 21, 2017).

American company was on a business trip in Canada when she slipped and fell in her hotel shower. *Id.* at 53–54. The parties agreed that Mulready was acting in the course of her employment at the time of her injury. We considered whether Mulready's injuries arose out of her employment. *Id.* at 54–55. We adopted the positional risk test and reasoned that Mulready should receive compensation because her injury arose from an activity that was "reasonably incidental" to travel required by her employer. *Id.* at 66. We explained:

> Absent facts indicating a distinct departure by the employee on a personal errand that would not be in the contemplation of the parties, an injury to a traveling employee generally is compensable so long as it occurred as a result of an activity reasonably incidental to the travel that the employer required. Thus even injuries suffered by traveling employees as a result of common perils of everyday life or as a result of purportedly personal acts generally are compensable. Inasmuch as, under ordinary circumstances, a traveling employee's eating and bathing are reasonably incidental to the travel required by the employer, injuries resulting from these acts are compensable.

*Id.*

Although Calvo argues that her status as a traveling employee is a factual question, we fail to see any support for that theory. The traveling employee rule applies to situations in which "the employee **suffered the injury on premises**, distant from the employee's home where the employee was staying in order to carry out the employer's business." *Id.* at 61–62 (emphasis added); *see also Gravette*, 216 Md. App. at 692–93. The requirement that Calvo report from her home to a different, but not very distant, work location does not transform her into a traveling employee. Her injury did not occur on the premises of a different location where her employer required her to stay to perform work functions. Calvo simply does not qualify as a traveling employee under applicable legal standards.

13

Calvo argues that two of our other cases, *Livering v. Richardson's Rest.*, 374 Md. 566 (2003), and *Roberts v. Montgomery Cty.*, 436 Md. 591 (2014), provide a basis to conclude that her injury occurred in the course of her employment because travel to the training was incident to her employment. In *Livering*, 374 Md. at 580–81, we held that an employee's injury arose out of and in the course of her employment when—while on her day off—she was injured at the restaurant where she worked while checking her schedule. In that instance, Livering's visit to restaurant on her day off was an effort to accommodate her employer's practice of frequently changing the work schedule. Livering had no phone, so she confirmed her schedule by either visiting the restaurant or calling in from elsewhere. *Id.* We applied the positional risk test to determine that Livering's injury arose out of her employment. *Id.* at 575–76. Relying on cases "involving off-duty or post-termination injuries sustained while on-premises to collect wages or personal property[,]" *id.* at 577–79, we determined that Livering's injury was compensable because checking her schedule was incident to her employment and she was injured on her employer's premises. *Id.* at 580.

In *Roberts*, 436 Md. at 606, we considered whether to apply the going and coming rule or the positional risk test to determine if a firefighter's injury arose out of and in the course of his employment. Roberts was a firefighter on light duty who had been temporarily assigned to a station different from his regular duty station. *Id.* at 595–96. He was injured during his shift while traveling from one site, where he had been engaged in physical training, to his regular duty station to pick up his mail. *Id.* at 596–97. We determined that the positional risk test controlled whether Roberts's injury arose out of and

14

in the course of his employment because he was "en route from a work-related activity to a site where he was to engage in a work-related act," and his employer was aware that Roberts routinely picked up his mail. *Id.* at 607. Because this travel was incident to his employment, the going and coming rule did not apply. *Id.* at 607 & n.15.

Calvo's reliance on these cases is misplaced, as both *Roberts* and *Livering* are materially distinct from the present circumstances. The County employed Calvo as a bus driver, required her to attend training at a different work site, and Calvo was injured while driving from her home to the site. Unlike the claimant in *Livering*, Calvo was not on her employer's premises engaging in an activity incident to her employment like checking her schedule, picking up a paycheck, or collecting tools. *See* 374 Md. at 579–80. And the facts do not show that Calvo was traveling between work-related sites, on duty, or compensated for her trip. *See Roberts*, 436 Md. at 607. The Circuit Court did not err in granting summary judgment for the County on the question of whether Calvo was a traveling employee.

Calvo has better luck with her next argument—that the special mission or errand exception to the going and coming rule applies to this case.

### The Special Mission Exception

We have recognized the special mission exception since *Reisinger-Siehler Co. v. Perry*, 165 Md. 191 (1933). *See Director of Fin. for the City of Baltimore v. Alford*, 270 Md. 355, 360 (1973). "[A] journey not normally covered under the Act . . . 'may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular

15

circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.'" *Wade*, 345 Md. at 15 (quoting 1 Arthur Larson, *The Law of Workmen's Compensation* § 16.11 (1996)). The rule "provides that an employee is acting in the course of employment when travelling on a special mission or errand at the request of the employer and in furtherance of the employer's business, even if the journey is one that is to or from the workplace." *Barnes v. Children's Hosp.*, 109 Md. App. 543, 555–56 (1996). The applicability of the exception turns on the particular facts of the case. *Reisinger-Siehler*, 165 Md. at 198.

To support her theory that the special mission or errand exception applies, Calvo points out that she was required to attend a mandatory training on a day she did not normally work, the training was infrequent and distinct from her normal role as a bus driver, and her attendance benefitted the County. The County argues that although Calvo was traveling to a different location and on a different day, she was attending a routine annual training, she was not compensated for her travel, there was no element of urgency, and no hazards out of the ordinary. Therefore, the County reasons, the special mission exception should not apply, and the going and coming rule bars compensation.

The Court of Special Appeals provided a thorough analysis of how a trip may fit within the special mission exception in *Barnes*, 109 Md. App. at 557–59. Barnes was the hospital's director of computer and information systems. She worked Monday through Friday, from 8:30 a.m. to 4:30 p.m., and was also "on call" at all times. She regularly received calls during her off hours, and although she usually resolved issues by phone, occasionally she would have to go in to address a problem. *Id.* at 551. One Saturday, the

16

hospital comptroller contacted Barnes while she was on a shopping trip with family members and asked her to come in and complete the monthly accounts receivable report, which was due that day. Barnes intended to drive her family home before heading to work, but realized she needed gasoline to reach the hospital. While en route to drop her family off, Barnes stopped to get gas, slipped on a puddle of oil and fell, sustaining injuries. *Id.* The Commission determined that Barnes's injury did not arise out of and in the course of her employment, and the Circuit Court affirmed the decision after a bench trial. *Id.* at 550.

The Court of Special Appeals reversed. It explained that whether a mission is sufficiently "special" to fall within the exception requires the analysis of multiple factors. *Id.* at 557. First, a court should consider the "'relative regularity or unusualness of the particular journey.'" *Id.* (quoting 1 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 16.13, at 4-208.24 (1992)). If the trip is "'relatively regular' in the context of the employee's normal duties," then there is a "'strong presumption'" that the going and coming rule applies. *Id.* (quoting 1 Larson & Larson, *supra* at § 16.13, at 4-208.24, 4-208.26).

Second, a court examines "'the relative onerousness of the journey compared with the service to be performed at the end of the journey.'" *Id.* at 558 (quoting 1 Larson & Larson, *supra*, at § 16.13, at 4-208.26). This analysis looks to the relationship between the journey and the service to be performed. Traveling a long distance to perform a minor service, supports application of the mission exception because it appears that the journey is part of the service. Whether a journey is onerous may also depend on the length of the

17

journey and the circumstances under which it is made, such as time of day, whether it is a regularly scheduled work day, or travel conditions. *Id.*

Finally, "the 'suddenness' of the call to work or whether it was made under an 'element of urgency' are also relevant factors." *Id.* (quoting 1 Larson & Larson, *supra*, at § 16.13, at 4-208.26, § 16.16, at 4-208.39). This factor may support a conclusion that the mission was special, but is not dispositive. *Id.* at 558–59.

The Court of Special Appeals applied the "usualness" and "onerousness" tests to the facts of Barnes's case, concluding that her trip was a special mission. *Id.* at 559. Barnes was asked to come in on a day she did not normally work, and there was no evidence that Barnes made regular trips in to work on Saturday. *Id.* at 559–60. Thus, the Court explained, Barnes's trip was "irregular or unusual in the context of her duties." *Id.* at 560. Barnes's trip was clearly in furtherance of the hospital's business interests, and it was onerous because she came in on her day off. *Id.* Although preparing the report was a routine task, the Court considered that there was an element of urgency because the report was due that day, the employee who usually did the task was absent, and the hospital asked Barnes to come in on her day off to specially complete it. *Id.* at 560–61.

The *Barnes* Court rejected the hospital's argument that the routine nature of the task barred application of the special mission exception because the exception "contemplates situations in which either the *journey* or the *mission* is special, not simply where the task to be performed is special." *Id.* at 561–62 (emphasis in original). Relying on cases from other jurisdictions, the Court explained that the exception applies because the employee makes a special trip at the employer's request, even if the task itself is normal in relation

18

to the employee's duties. *Id.* at 562–64. Thus, Barnes's journey to the hospital was a special mission.[6]

On the other hand, *Mayor & City Council of Baltimore v. Jakelski*, 45 Md. App. 7 (1980), illustrates when the special mission exception does **not** apply. Jakelski was a police officer who made regularly scheduled appearances in court once a month to testify about the traffic citations he had issued. *Id.* at 8. Jakelski got into a car accident while driving to court. He had been scheduled to appear at 2:00 p.m., and after testifying, report to his regular shift beginning at 3:30 p.m. *Id.* The Court of Special Appeals determined that Jakelski's trip was not a special mission. *Id.* at 11. Jakelski was required to regularly testify in traffic court as part of his job, and the journey was not irregular or unusual. *Id.* at 12. The Court observed that "if the court appearance had been an isolated obligation, the journey to testify might well have been a special errand or mission," but because it was a "regular duty, periodically to be performed," the exception did not apply, and the going and coming rule barred compensation. *Id.* at 13.

Considering these cases, as well as other Maryland precedent, the first requirement of the exception is that employer must require the employee carry out the special mission. *See Alford*, 270 Md. at 363–64; *Reisinger-Siehler*, 165 Md. at 192–93; *Coats & Clark's Sales Corp. v. Stewart*, 39 Md. App. 10, 13 (1978); *see also Huffman v. Koppers Co., Inc.*, 94 Md. App. 180, 187 (1992) ("Employees feel obligated to go on the special mission

---

[6] The Court of Special Appeals concluded that Barnes's anticipated detour to obtain gasoline and drop off her family also fell within the special mission exception because the journeys were reasonably related to business purposes. *Barnes v. Children's Hosp.*, 109 Md. App. 543, 565–68 (1996).

19

because of the apparent underlying implication that if they do not go, their employment may be jeopardized."). The parties do not dispute that the County required Calvo to attend the training because of her employment. The fact that the training was mandatory, as the training notice states, suggests that Calvo's attendance benefitted her employer.

Applying *Barnes* and *Jakelski*, the question of whether Calvo was on a special mission hinges on two factors: (1) the regularity or unusualness of the journey in the context of Calvo's normal duties, and (2) the onerousness of the journey. *See Barnes*, 109 Md. App. at 559–60; *Jakelski*, 45 Md. App. at 11–13; *see also* 2 Arthur Larson, Lex K. Larson & Thomas Robinson, *Larson's Workers' Compensation Law* § 14.05[3], at 14–10– 14-11 (Matthew Bender rev. ed. 2017).

Here, the parties do not dispute that the customer service training took place annually. Calvo points out that her training took place much less frequently than Jakelski's court appearances. The County maintains that *Jakelski* is dispositive because the required training occurred with regularity—annually—and the factors in *Barnes* do not support Calvo's position. We are not persuaded. *Jakelski* is an uneasy fit as precedent here. Once per month does not readily compare with once per year when we consider that the material question at hand is the regularity or unusualness of Calvo's journey **in the context of her normal duties**. *Barnes*, 109 Md. App. at 557.

The mandatory nature of the training does not mean it was **regular** in relation to her employment. The Commission considered the following facts: (1) Calvo regularly drove

a bus Monday through Friday;[7] (2) her regular trip to work was to the Silver Spring Bus Depot; (3) she was assigned to attend training on a Saturday, when she did not work; and (4) the training took place at a different location than her usual work site.

With regard to regularity or unusualness, we consider the journey to the training in the context of Calvo's normal duties. Journeys made daily, at regular intervals, or that are part of the employee's regular duties weigh against application of the special mission exception. *See* 2 Larson, *supra*, at § 14.05[3], at 14-10; *Barnes*, 109 Md. App. at 557; *Jakelski*, 45 Md. App. at 11.

Determining regularity or unusualness requires heavy reliance on the particular facts and the inferences that may be drawn from those facts. For example, Jakelski's trips to court were regularly scheduled and part of his ordinary duties as a police officer. *Jakelski*, 45 Md. App. at 12. On the other hand, Barnes's trip took place on a day she did not normally work. While she was on call during her off hours, Barnes usually addressed problems by phone, and only infrequently went in to work. *Barnes*, 109 Md. App. at 560. The Court's determination that Barnes's trip was not regular in the context of her duties focused on the **journey**, not the task to be performed. *Id.* at 564. In reaching this conclusion, the *Barnes* Court relied on cases from other jurisdictions that had awarded

---

[7] During oral argument, the County speculated that Calvo's schedule could "change at any time" because "bus routes change." The special mission exception requires that the employee have "identifiable time and space limits on the employment . . . ." 2 Arthur Larson, Lex K. Larson & Thomas Robinson, *Larson's Workers' Compensation Law* § 14.05[1], at 14-5 (Matthew Bender rev. ed. 2017). It is uncontroverted from the record that Calvo had fixed temporal and spatial limits on her employment. We do not find the argument that her employer **could** change her schedule persuasive.

compensation under the special mission exception to employees who performed tasks "within the scope of their ordinary duties" when the employee made an unusual journey to perform the task at a time when the employee did not typically work.[8]  *Id.* at 562–64.

Like *Barnes*, and unlike *Jakelski*, Calvo was required to work on a day she did not normally work.  *See id.* at 551.  That the task might have been part of her employment is not dispositive—Barnes's duties occasionally required her to come in to work during her off hours.  *Id.* at 560.  Special mission cases from other jurisdictions support this conclusion.  *See Johnson v. Fairbanks Clinic*, 647 P.2d 592, 596 (Alaska 1982) (pre-surgical meeting); *Eady v. Med. Pers. Pool*, 377 So. 2d 693, 695 (Fla. 1979) (nursing duties); *Brown v. City of Wheeling*, 569 S.E.2d 197, 200 (W. Va. 2002) (mandatory training).  Although the record shows that Calvo attended the other trainings, there is no evidence whether the past trainings took place on her day off, or whether she was regularly required to journey to different worksites for training.  Applying the law to the facts, we conclude that it would not have been unreasonable for a jury to conclude that Calvo's travel

---

[8] *See, e.g.*, *Johnson v. Fairbanks Clinic*, 647 P.2d 592 (Alaska 1982) (compensation to doctor who made an unusual weekend trip to work to discuss an upcoming surgery with a patient); *Eady v. Med. Pers. Pool*, 377 So. 2d 693 (Fla. 1979) (compensation awarded to nurse who made a trip to a patient's home at her employer's behest after a full shift earlier in the day); *Kyle v. Greene High Sch.*, 226 N.W. 71 (Iowa 1929) (compensation awarded to school janitor who was asked to come in after work to fix lights for the high school basketball game); *Jonas v. Lillyblad*, 137 N.W.2d 370 (Minn. 1965) (affirming compensation to janitor who went to work outside his regular hours to turn on and off the furnace); *Bengston v. Greening*, 41 N.W.2d 185 (Minn. 1950) (awarded compensation to bookkeeper who worked on weekdays and was asked to come in on a Saturday to gather records for the accountant preparing her employer's tax return); *Hughes v. N.Y. Tel. Co.*, 472 N.Y.S.2d 513 (N.Y. App. Div. 1984) (compensation awarded to line foreman who was called in while off duty to check on a report of a broken telephone pole).

22

to a different location for training—on a day she did not normally work—was sufficiently irregular or unusual to justify a fact-finder's conclusion that she met that criteria for the exception.

Like regularity, analysis of the onerousness factor is fact-intensive. *See* 2 Larson, *supra*, at § 14.05[3], at 14-10–11. In support of her argument that onerousness is a factual question to be decided by the jury, Calvo avers that the County never established the difference in distance between Calvo's usual work journey and her journey to the assigned training. She contends that the Circuit Court improperly engaged in fact finding in deciding that the training was insufficiently remote to support the special mission exception. The County responds that it was proper for the Circuit Court to rely on the length of the journey in evaluating the applicability of the special mission exception, and nothing about Calvo's commute rendered it onerous.

To determine whether a journey is onerous, a court examines the "relative onerousness of the journey compared with the service to be performed at the end of the journey." *Id.* at 14-10; *see also Barnes*, 109 Md. App. at 558. This inquiry considers whether the journey itself is an element of the service, which may be assessed by looking to the task performed compared with the trip. *See Barnes*, 109 Md. App. at 558; 2 Larson, *supra*, at § 14.05[3], at 14-10–11; *see also Reisinger-Siehler*, 165 Md. at 198–99 (nature of employment suggests implied agreement that travel was part of duties). We also consider the circumstances of the journey, such as "the time of day, whether it is a regular workday, or the conditions of travel." *Barnes*, 109 Md. App. at 558; *see also* 2 Larson, *supra*, at § 14.05[3], at 14-11. But if the "terms of employment" clearly contemplated that

23

the employee would regularly have to make the journey at that time, then that factor does not support onerousness. 2 Larson, *supra*, at § 14.05[3], at 14-11.

*Barnes*, 109 Md. App. at 558, is the primary Maryland case to directly consider the onerousness of a journey. There, the Court of Special Appeals determined that Barnes's journey—even to her usual place of employment—was "sufficiently onerous" because she had to report in on a day she did not expect to work. *Id.* at 560. Other Maryland cases have peripherally addressed onerousness. In *Reisinger-Siehler*, 165 Md. at 198–99, we determined that compensation was appropriate under the special mission exception when the employee's regular duties created an implied agreement that travel was part of his duties. This decision rested in part on the fact that the employee was constantly on call, and the work he might be required to do when called in after his usual hours might only occupy a few minutes of time. *Id.* In *Jakelski*, 45 Md. App. at 13–14, the Court of Special Appeals determined that the exception did not apply when Jakelski was traveling to "the courthouse where he was regularly compelled to attend on a monthly basis . . . ." Further, Jakelski was already scheduled to work a shift that would begin after his court appearance. *Id.* at 8.

Other jurisdictions consider similar factors to conclude that a journey is onerous. In *Eady*, 377 So. 2d at 696, the Supreme Court of Florida explained that the analysis centers on "the relative burden of the journey on the employee" in comparison with "the extent of the task to be performed in the context of the employee's duties." Other factors in assessing the employee's burden include "[t]he suddenness of the assignment from the employer, the time and length of the journey, and any special circumstances . . . ." *Id.*; *see also Johnson*,

647 P.2d at 594; *State v. Indus. Comm'n of Utah*, 685 P.2d 1051, 1055 (Utah 1984); *Schell v. Blue Bell, Inc.*, 637 P.2d 914, 917 (Okla. Civ. App. 1981).

Maryland precedent, and that of other jurisdictions demonstrates that onerousness requires a consideration of all the facts and circumstances of the journey. We think appropriate factors include the burden of the journey in comparison with the task to be completed, suddenness, urgency, the length and time of the journey, as well as whether the employee was required to work on a day that she did not normally work. *See Reisinger-Siehler*, 165 Md. at 198–99; *Barnes*, 109 Md. App. at 558; *Eady*, 377 So. 2d at 696; 2 Larson, *supra*, at § 14.05[3], at 14-11.

The undisputed facts relating to onerousness in this case are: (1) Calvo was required to attend a mandatory work training on a day she did not typically work; and (2) she was required to go to a different location than her usual worksite.[9] We observe that in *Barnes*, 109 Md. App. at 560, the Court of Special Appeals found onerousness because Barnes was required to go to work on her day off. This factor brings Calvo's case closer to *Barnes*, *id.*, than *Jakelski*, 45 Md. App. at 8. *See also Fairchild Space Co. v. Baroffio*, 77 Md. App. 494, 501 (1989) (no special mission if the only special element is that the employee was required to come in earlier than usual).

---

[9] The County is correct that the length of the journey is relevant to onerousness. *See Barnes*, 109 Md. App. at 558; 2 Larson, *supra*, at § 14.05[3], at 14-10–11. But it is not dispositive. We also observe that in its motion for summary judgment, and during the hearing, the County did not offer any information about the length of the journey, other than to point out that the training notice provides directions from the Silver Spring Depot to the Gaithersburg Depot.

The Circuit Court concluded that the County's requirement that Calvo attend the training on her day off was "of no moment." The Court of Special Appeals likewise ignored this factor, stating that there was no evidence to support onerousness other than the change in worksite. *Calvo*, 2016 WL 2666161, at *7. Both Courts erred in this respect. *Barnes* and authority from other jurisdictions support application of the special mission exception when the employee was called in to perform a task on a day the employee did not ordinarily work.[10]

With regard to the burden of the journey in comparison with the task to be performed, the facts show that Calvo was required to spend a full day in training after her journey in. So clearly, this case does not fit within the rule that an arduous journey to complete a relatively negligible task may be a means of reaching onerousness. *See* 2 Larson, *supra*, at § 14.05[3], at 14-10–11. But there is more than one way to qualify as a special mission, and here, the most important factor is that Calvo was required to attend the work-related function on a day she did not normally work.

The County is correct that cases addressing the special mission exception have considered urgency and suddenness in applying the mission. *See Reisinger-Siehler*, 165 Md. at 198; *Alford*, 270 Md. at 363; *Barnes*, 109 Md. App. at 560–61. It is undisputed that Calvo, unlike *Alford* or *Barnes*, was given 10 days' notice of the training, rather than suddenly being called in to work. But, as the Court of Special Appeals correctly pointed out, urgency is a sometimes sufficient, but not necessary condition that can transform a trip

---

[10] *See supra* note 8 (listing cases).

26

into a special mission. *Calvo*, 2016 WL 2666161, at *7; *see also* 2 Larson, *supra*, § 14.05[5], at 14-13. As such, we do not find the County's argument about urgency persuasive.

The County also contends that Calvo was not exposed to any special hazards by being required to attend the training on her day off at a different location. In *Baroffio*, 77 Md. App. at 501 n.5, the Court of Special Appeals observed that 1 Larson, *Workmen's Compensation Law*, § 16.11, at 4-154–4-157 (1985), supports application of the special mission exception "if the employee is required to report to work so early or remain so late that hazards are created or magnified . . . ." *Larson's Workers' Compensation Law* cites cases suggesting that extended hours of work may support application of the exception when extraordinary demands of employment substantially increase the hazards of the commute. *See* 2 Larson, *supra*, at § 14.05[4], at 14-11–12. But other Maryland cases addressing the special mission exception have not treated this as a necessary condition, and we decline to do so today. *See Reisinger-Siehler*, 165 Md. at 198–99; *Alford*, 270 Md. at 364; *Barnes*, 109 Md. App. at 564.

Our conclusion that an employer-assigned training at a different location may rise to the level of a special mission is supported by cases from other jurisdictions. *See McLin v. Indus. Specialty Contractors, Inc.*, 851 So. 2d 1135, 1142 (La. 2003) (employee attending an off-site mandatory safety meeting after work hours); *Edens v. New Mexico Health & Soc. Servs. Dep't*, 547 P.2d 65, 68 (N.M. 1976) (employees required to attend special meeting in other city); *Brown*, 569 S.E.2d at 203 (employee required to attend training at different location).

27

Our review of the facts and the law lead us to conclude—in this admittedly close case—that the evidence created permissible inferences from which the jury could have rationally concluded that the special mission exception applied.[11]  Accordingly, the Circuit Court erred in granting summary judgment against Calvo on the grounds that the special mission exception did not apply.  *Kelly*, 391 Md. at 80; *Jewel Tea Co. v. Blamble*, 227 Md. 1, 4 (1961); *Moore*, 175 Md. at 45.

**CONCLUSION**

The Circuit Court did not err in its conclusion that the going and coming rule, rather than the traveling employee doctrine, controlled Calvo's case.  But because the undisputed facts permit a reasonable conclusion that the special mission exception to the going and coming rule applies, the Circuit Court erred in granting summary judgment against Calvo.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.  CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR TRIAL.  COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.**

---

[11] Calvo did not file a cross-motion for summary judgment.  Accordingly, because we conclude the grant of summary judgment was improper, the appropriate remedy is a remand to the Circuit Court for a trial before a jury, who can decide whether, under the facts of this case, Calvo's injury is compensable.

IN THE COURT OF APPEALS
OF MARYLAND

No. 48

September Term, 2017

RINA CALVO

v.

MONTGOMERY COUNTY,
MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty

JJ.

Dissenting Opinion by Greene, J., which
Barbera, C.J. and Getty, J., join.

Filed: May 21, 2018

I respectfully dissent.

The Maryland Workers' Compensation Act ("Act") benefits persons who suffer "an accidental injury that arises out of and in the course of employment." Maryland Code, Labor and Employment Article, § 9-101(b)(1). Generally, the Act excludes compensation benefits for injuries that occur when an employee is going to or coming from the workplace. When the "going and coming" rule applies, compensation benefits are denied because the injuries do not "arise out of and in the course of employment." *Board of Cnty. Comm'rs for Frederick Cnty. v. Vache*, 349 Md. 526, 531, 709 A.2d 155, 158 (1998); *see also Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572, 574 (1993). The rationale of the "going and coming" rule is rooted in the idea that "the Act does not protect employees against the common perils of life and the dangers of ordinary commuting are dangers that are common to all people." *Barnes v. Children's Hosp.*, 109 Md. App. 543, 555, 675 A.2d 558, 564 (1996) (internal citations omitted). We have, of course, recognized several exceptions to the "going and coming" rule. As we explained in *Vache*, several exceptions to this general rule include:

> 1. [W]here the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. 2. Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. 3. The "proximity" exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. 4. *Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable*.

349 Md. at 532, 709 A.2d at 158. (Emphasis added) (internal citations omitted). In the present case, we are concerned with the last exception, the special mission or errand rule.

The special mission rule has been explained as follows:

When an employee, having identifiable time and space limits on the employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

Larson's Workers' Compensation Law, § 14.05 at 14-5 (2017) (footnotes omitted). Additionally, the rule has been framed in terms of the "special degree of urgency or inconvenience[:]"

[w]hen the making of the journey, or the special degree of urgency or inconvenience under which the journey is made, is of such a character that *the journey itself* constitutes a substantial part of the service that the employee is rendering, an employee is considered to be acting in the course of employment.

*See Barnes*, 109 Md. App. at 556, 675 A.2d at 564 (citing Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation, § 16.00 (1992)).

Despite the difficult task of precisely defining a "special mission," the Court of Special Appeals has distilled the special mission rule into three factors that, when taken together, tend to suggest whether "a mission is sufficiently 'special' to be brought within the ambit of the rule." *Barnes*, 109 Md. App. at 557, 675 A.2d at 565. Those factors include: (1) the relative regularity of the journey in the context of the employee's normal duties; (2) the onerousness of the journey in light of the service the employee must perform

2

at the workplace; and (3) the suddenness, or element of urgency, of the call to work. *See id*. at 557-59, 675 A.2d. at 565.

The first factor considers whether the journey is "relatively regular." If, "in the context of the employee's normal duties," the journey is relatively regular then there is a "'strong presumption' that the trip is not special and instead falls within the normal going and coming rule." *Id*. at 557, 675 A.2d at 565. The second factor weighs the onerousness of the journey in tandem with the service to be performed at the conclusion of the journey. A service that is of little consequence but requires a long or onerous journey is more likely a special mission. *See id.* at 558, 675 A.2d at 565. Finally, the third factor examines "the 'suddenness' of the call to work or whether it was made under an 'element of urgency'[.]" *Id*. For example, a court may consider whether the "employee must drop everything and travel to the workplace." *Id*.

In this case, the material facts relevant to the application of the special mission rule are not in dispute. Ms. Calvo was injured while traveling from her home to a required work-related training on a Saturday, she suffered injuries as a result of an accident that occurred while she was traveling to the training, and she filed a claim under the Act. When measured against the three *Barnes* factors, and taken together as a whole, the undisputed facts do not tend to suggest that Ms. Calvo's "mission [wa]s sufficiently 'special' to be brought within the ambit of the rule." *Id.* at 557, 675 A.2d at 565. In my view, Ms. Calvo's journey was not sufficiently irregular, onerous, or unusual to constitute a "special mission."

With respect to the first factor relating to the relative regularity of her journey in the context of Ms. Calvo's normal duties, the parties do not dispute that:

- The travel to the scheduled training was sufficiently work-related.
- But for Ms. Calvo's obligation to attend the training, she would not have been in route that day.
- The County mandated that Ms. Calvo attend the training as part of her employment.
- The training occurred on an annual basis.
- Ms. Calvo has attended the training in previous years.

In the case of *Mayor and City Council of Baltimore v. Jakelski*, the Court of Special Appeals concluded that a police officer's monthly appearances in traffic court were not sufficiently special for the officer to recover for injuries sustained in an accident on his way to traffic court to testify. 45 Md. App. 7, 11-14, 410 A.2d 1116, 1119-20 (1980), *cert. denied*, 287 Md. 753 (1980). The intermediate appellate court explained that the officer's court appearance was not "an isolated obligation" but was "a regular duty" that was performed "periodically." *Id*. at 13, 410 A.2d at 1120. The court did not define regular or periodic for purposes of the special mission rule, noting only that the officer "was regularly compelled to attend [court] on a monthly basis." *Id*. at 14, 410 A.2d at 1120.

The Majority Opinion in the present case concludes that *Jakelski* is "an uneasy fit as precedent here." Maj. Slip Op. at 20. The analysis of the Majority Opinion turns on the rationale that the once per month court appearances in *Jakelski* are incompatible with the once per year training for Ms. Calvo. Given the language used by the *Jakelski* court to describe the officer's court appearances—"[not] an isolated obligation", "regular duty," "periodically"—it cannot be said that the rule's application depends on one rigid temporal

4

definition, *e.g.* monthly. *See Jakelski*, 45 Md. App. at 13, 410 A.2d at 1120. An annual obligation is as *periodic* as a monthly or weekly obligation. *See* Merriam Webster Collegiate Dictionary 862 (10th ed. 2001) (defining "periodic" as "occurring or recurring at regular intervals"). Ms. Calvo could anticipate, indeed even expect, that she would have to attend mandatory training on an annual basis, just as the officer in *Jakelski* could anticipate that he would appear in traffic court on a regular basis. That Ms. Calvo's journey took place only once per calendar year does not, by itself, transform the nature of the journey into an irregular, unpredictable, or special mission.

*b. Onerousness of the journey in light of the service to be performed*

With respect to the second factor involving "the onerousness of the journey in light of the service the employee must perform at the workplace[,]" the parties do not dispute that:

- Ms. Calvo regularly worked Monday through Friday.
- Ms. Calvo was required to attend the training on a Saturday.
- Ms. Calvo's regular work site was the Silver Spring Bus Depot.
- Gaithersburg, the location of the training, was a different location than Silver Spring, her usual work site.
- The training was related to customer service.

In *Barnes*, the Court of Special Appeals determined that the special mission rule applied where an employee had been called into her workplace on a Saturday to complete an accounting report that was due that day. 109 Md. App. 543, 675 A.2d 558 (1996). There was no evidence of "the frequency with which Barnes made weekend trips to the Hospital or the circumstances under which such trips were made." *Id.* at 560, 675 A.2d at 566 (footnote omitted). Moreover, there was no evidence that the employee "regularly made

5

weekend trips to the Hospital." *Id*. at 559, 675 A.2d at 566. In analyzing the second factor, the intermediate appellate court concluded that the trip was "sufficiently onerous" based on numerous considerations, including that the journey "required Barnes to report to the office on a day on which she did not expect to work" and "she was engaged in a personal matter at the time she was paged." *Id*. at 560, 675 A.2d at 566.

The Majority Opinion zeroes in on the fact that Ms. Calvo, as was also true in *Barnes*, "was required to work on a day she did not normally work." Maj. Slip Op. at 22-23. According to the Majority Opinion's analysis of *Barnes*, the intermediate appellate court "found onerousness because Barnes was required to go to work on her day off." *Id*. at 25. That characterization, however, imprecisely narrows the scope of the *Barnes* analysis. The intermediate appellate court considered more than the fact that the employee's trip was on a day that "was not a normally scheduled work day." It also weighed the regularity of her making weekend trips to the hospital, the unusualness of being contacted during off-hours as well as the frequency and circumstances under which she made weekend trips to the hospital. *See Barnes*, 109 Md. App. at 559-60, 675 A.2d at 566.

Nevertheless, even if the Majority *only* focused on the onerousness factor in the instant case, it would come up short. There were no facts—other than it was not a normally scheduled work day— to indicate that Ms. Calvo's journey to the training worksite on a Saturday was onerous in terms of its length, the distance the employee had to travel, the travel conditions, or "the circumstances under which it [wa]s made, *i.e.* the time of day,

6

whether it [wa]s a regular workday, or the conditions of travel" *See Barnes*, 109 Md. App. at 558, 675 A.2d at 565.

Moreover, the undisputed facts of this case do not warrant the conclusion that the journey in light of the service to be performed, *i.e.* participation in training to improve the employer's customer service, constituted a substantial part of the service that Ms. Calvo rendered to her employer. The relationship between Ms. Calvo's journey and the service to be performed is illustrated by the hypothetical in *Barnes*: "if a janitor [who] walks five blocks to spend two hours working at a church in the evening, it would be difficult to conclude that the journey is a significant part of the total service." 109 Md. App. at 558, 675 A.2d at 565. The record before us is devoid of facts that would explain the onerousness of the journey in light of the service to be performed, such as:

- Travel conditions on the day of the journey,
- Time of day of the journey as compared to usual work obligation,
- Weather conditions on the day of the journey,
- Difference in the distance between Ms. Calvo's usual work site and the training work site, or
- Whether the employer had directed the employee's course of travel.

I am persuaded by the reasoning of *Carberry v. State, Div. of State Police*, 652 A.2d 232 (N.J. Sup. Ct. 1995), which rejected the application of the special mission rule in a case involving an officer who was injured while returning from the physician's office. The officer's employer had directed him to obtain a medical clearance from a physician prior to returning to work. *Id.* at 234. The New Jersey intermediate appellate court recognized that although the employer directed the officer to obtain the clearance prior to returning to full-time duty, the employer "did not dictate, nor did it have any control over the course of

7

petitioner's travel, or manner by which he was transported to [the doctor's] office." *Id*. at 236. Similarly, in the present case, the employer directed that Ms. Calvo obtain the required training. In no way can it be said that the employer had any control Ms. Calvo's travel, or manner of travel to the training site.

*c. Suddenness, or element of urgency*

With respect to the third factor of "suddenness, or element of urgency," the parties do not dispute that:

- Ms. Calvo was given 10 days of advance notice of the training.
- Ms. Calvo attended a make-up training session later that year.

When this Court first recognized the special mission rule in *Reisinger-Siehler Co. v. Perry*, we applied the rule in a case where an employee was called to investigate unusual activity at his workplace between the hour of 11 and 12 o'clock at night. 165 Md. 191, 193, 167 A. 51 (1933). Upon completing his duties at the store and while returning home, the employee suffered injuries after being struck by a vehicle. *Id*. at 193, 167 A. at 51. There, our rationale was based on the premise that the employee had been called *unexpectedly* to his workplace at *midnight* to check on an *unusual* circumstance. Given these circumstances, we concluded that the journey was a special mission on behalf of the employer.

Likewise, in *Barnes*, the Court of Special Appeals considered the urgency factor of the employee who was called into work on a Saturday. There, the intermediate appellate court noted that the employee who usually ran the accounting report was not available,

8

thus, making Barnes's trip necessary. 109 Md. App. at 560-61, 675 A.2d at 566. The Court of Special Appeals properly focused on the nature of the journey as one that was unexpected, unusual, and urgent, and, therefore, correctly determined that the journey was a special mission on behalf of her employer.

In the instant case, the Majority Opinion disregards any consideration of urgency, or lack thereof, in its analysis. *See* Maj. Slip Op. at 26-27. By doing so, the Majority Opinion gives short shrift to the import of this factor in the *Barnes* analysis. Significantly, the Court of Special Appeals, in *Barnes*, observed, "the fact that Barnes was called on a Saturday and instructed to report to the Hospital indicates that the task was . . . obviously urgent . . . because the employee who usually did the work was not available." 109 Md. App. at 560-61, 675 A.2d at 566. In Ms. Calvo's case, there was no evidence of an emergency situation, much less evidence that the training was an urgent matter. The instant case stands in strong contrast to the *Reisinger-Siehler Co.* case, as well, because "the employee rushed to a store at which he was employed after hearing a report of a possible break-in." *Barnes*, 109 Md. App. at 558, 675 A.2d at 565. In this way, Ms. Calvo's journey differs from the employees' journeys in both *Barnes* and *Reisinger-Siehler Co.* Ms. Calvo's journey, however, is on similar footing as the officer's journey in *Carberry*. The Superior Court of New Jersey in that case observed that the officer endured "no such 'enhanced exposure to hazard" on his journey and concluded that "the inconvenience in making the trip to [the doctor's] office was not 'sufficiently substantial to be viewed as an integral part of the service itself.'" 652 A.2d at 236-37 (quoting *Larson*, § 16.11 at 4-204).

9

Although I agree with the intermediate appellate court that "an emergency is not always needed for there to be a special mission[,]" *see Dir. of Fin. for City of Baltimore v. Alford*, 270 Md. 355, 311 A.2d 412 (1973), evidence of an urgency was entirely lacking from the record in the present case. Thus, I depart from the Majority's wholesale exclusion of *any* consideration of urgency in its analysis of the facts before us. The urgency factor, or lack thereof, is relevant and informs the analysis of an employee's journey as much as the other factors. It is undisputed that Ms. Calvo was given 10 days of advance notice of the date scheduled for training. Moreover, when Ms. Calvo was not able to attend the first training, she attended a training session held later that same year.

As the Majority Opinion explains, and I agree, where "the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the Court." *Harrison v. Cent. Constr. Co.*, 135 Md. 170, 180, 108 A. 878 (1919). Where there are facts, or inferences drawn therefrom, that are relevant to the regularity, onerousness, or urgency of the journey that are in dispute, the question of whether the special mission rule applies is appropriate for the jury. *Cf. Whitehead v. Safeway Steel Products, Inc.*, 304 Md. 67, 75, 497 A.2d 803, 807 (1985) ("[T]he question as to whether the injury occurred out of or in the course of employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact[.]" (quoting *Harrison*, 135 Md. at 180, 108 A. at 878)). Here, there are no facts in dispute, and no dispute as to the inference to be drawn from the facts. The Circuit Court, therefore, properly decided the question of law. *See Bogatsky v. Swerdlin*, 152 Md. 18, 22, 135 A.

10

416, 418 (1926) ("[I]f the facts are conceded or undisputed, there is no issue of fact to be submitted to the jury[.]").

Accordingly, the Circuit Court did not err in granting summary judgment as the special mission exception did not apply. The County was entitled to judgment in its favor as a matter of law, as there was no genuine dispute as to any material fact. Therefore, I would affirm the judgment of the Court of Special Appeals.

Chief Judge Barbera and Judge Getty have authorized me to state that they join in this dissenting opinion.

11